[876 NYS2d 409]

City of New York et al., Respondents, v College Point Sports
Association, Inc., et al., Defendants, and Frank Casalino
et al., Appellants.

Second Department, January 20, 2009

34

## APPEARANCES OF COUNSEL

*Tarshis & Hammerman, LLP*, Forest Hills (*Michael A. Hammerman, Abraham Abramovsky* and *Jonathan I. Edelstein* of counsel), for appellants.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Stephen J. McGrath, Kristin Glover* and *Victoria Scalzo* of counsel), for respondents.

## OPINION OF THE COURT

DILLON, J.P.

We are presented with an appeal involving a $16.5 million claim by the City of New York, John J. Doherty, Commissioner

of the Department of Sanitation of the City of New York, and the Department of Sanitation of the City of New York (hereinafter collectively the City), arising out of their remediation of a site in College Point, where the defendants allegedly dumped, or caused or permitted the dumping of, debris in violation of provisions of the Environmental Conservation Law. This appeal involves a matter of public interest and raises unique issues regarding causes of action that implicate CPLR 213-b, collateral estoppel, accord and satisfaction, common-law indemnity, and restitution.[1]

I. Relevant Facts

The defendant, College Point Sports Association, Inc. (hereinafter CPSA), leased 22 acres of real property (hereinafter the College Point site) from the plaintiff City of New York, which were to be developed into a community sports complex. CPSA entered into a contract with the defendant, Enviro-Fill, Inc. (hereinafter Enviro-Fill), to construct the complex, which mandated delivery to the College Point site of approximately 140,000 cubic yards of clean fill material. Enviro-Fill did not charge any of the parties for the work it performed, as its revenue was instead derived from contractors who were permitted to dump fill at the College Point site in exchange for payments to Enviro-Fill in the sum of $8 to $10 per cubic yard.

Inspectors of the City's Department of Sanitation (hereinafter the DOS) thereafter discovered that fill dumped at the College Point site was not "clean" earth, gravel, or sand, as it included asphalt, wood, metal drums, plastic, processed construction and demolition waste, and other materials that emitted a stench. Indeed, the City later alleged that Enviro-Fill accepted improper debris and waste from companies controlled by the defendants Frank Casalino, Anthony Casalino, and Joseph Casalino (hereinafter collectively the Casalino defendants), charging the Casalino defendants more than $13 per cubic yard for the right to dump materials at the College Point site.

---

**1.** Several months after oral argument of this appeal, the attorneys for the parties notified this Court that they had reached a settlement of the action. Although an appeal will be considered academic if the rights of the parties will not be directly affected by the determination of the appeal, an exception to the mootness doctrine permits appellate courts to preserve for review cases which present "(1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues" (*Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 714-715 [1980] [footnotes and citations omitted]). All three factors excepting this appeal from the mootness doctrine are present here.

On October 31, 1997, the DOS issued an initial order directing CPSA and Enviro-Fill to close the College Point site and remove unacceptable material. Enviro-Fill challenged the DOS order before the New York City Office of Administrative Trials and Hearings (hereinafter OATH) pursuant to Administrative Code of City of NY § 16-131.2 (b) (3). After a hearing, OATH issued a report and recommendation dated March 12, 1998, confirming the initial DOS order. The DOS thereafter issued a final determination and order dated March 24, 1998, which directed, inter alia, that unacceptable fill material be removed from the College Point site to the satisfaction of the City, and also that any "expense[s] incurred by [the DOS] in performing such work shall be a debt recoverable from the parties to [the] final order," namely CPSA and Enviro-Fill. CPSA and Enviro-Fill unsuccessfully challenged the DOS final order via a CPLR article 78 proceeding (see Matter of Enviro-Fill, Inc. v Doherty, 269 AD2d 529 [2000]).

CPSA and Enviro-Fill never complied with either the initial DOS order or the final DOS determination and order. Consequently, between December 1999 and March 2001, the DOS removed and disposed of 211,168 tons of unacceptable fill from the College Point site. The cost of the remediation to the City was approximately $16.5 million. The City claimed that it incurred costs in the sum of $10,641,978 for the removal and disposal of unclean fill, plus an additional sum of $5,847,357 to regrade the land and construct athletic fields at the College Point site.

On May 7, 2001, the Casalino defendants and three corporations they controlled were indicted by the Queens County District Attorney. The indictment alleged that the named criminal defendants dumped dangerous materials at the College Point site to save on carting and dumping expenses. The indictment contained 734 counts that included charges of, inter alia, offering a false instrument for filing in the first and second degrees, falsifying business records in the first degree, conspiracy in the fifth degree, the release into the environment of more than 70 cubic yards of solid waste, and the release into the environment of more than 10 but less than 70 cubic yards of solid waste, on various dates between March 1996 and October 1997.

The Casalino defendants cooperated with the District Attorney's office, agreeing after the indictment to provide information to prosecutors and to testify against others if required, in exchange for each criminal defendant pleading guilty to one

count of the indictment in full satisfaction of the 734 counts. On September 24, 2001, the Casalino defendants each pleaded guilty before the Supreme Court, Queens County (Eng, J.), to count 443 of the indictment, admitting that, on November 22, 1996, they "knowingly [caused] the release of more than 70 cubic yards of solid waste into the environment as defined in the [E]nvironmental [C]onservation [L]aw" (ECL 71-2703 [2] [c] [i]), a class A misdemeanor. The Casalino defendants were subject to an extensive voir dire and were represented by legal counsel at the time of the pleas of guilty. By prior agreement with the prosecution, the sentences were deferred pending continuing cooperation by the Casalino defendants, and the prosecution's sentence recommendations were dependent upon the nature and extent of that cooperation. Additionally, the Casalino defendants agreed to pay total aggregate restitution, divided between them on a pro rata basis, in the sum of not less than $250,000 nor more than $1,000,000.

The City commenced the instant civil action by the filing of a summons and complaint; it thereafter filed an amended summons and amended complaint dated October 20, 2003. In its amended complaint, the City sought to recover damages in the sum of approximately $16.5 million for funds that it expended in removing and replacing unacceptable fill at the College Point site and in regrading and constructing the athletic fields at the College Point site.

The amended complaint alleged seven causes of action. Two causes of action, which are beyond the scope of this appeal, were directed solely against Enviro-Fill and its principals regarding their acceptance of unclean fill at a per-cubic-yard rate that was higher than authorized. The causes of action against the Casalino defendants and other indicted defendants alleged common-law public nuisance, statutory public nuisance, common-law indemnity, common-law restitution, and damages recoverable by a crime victim subject to CPLR 213-b.

On January 8, 2004, the Casalino defendants were sentenced in the Supreme Court, Queens County (Eng, J.) to a one-year conditional discharge and directed to make restitution in the sum of $250,000. The City's amended summons and amended complaint were not served upon the Casalino defendants until April 2004, after the criminal sentences were imposed. The Casalino defendants maintain that they were not aware that the City had commenced a civil action against them at any time

prior to their sentencing and before the service of process upon them of the pleadings in the instant action.[2]

On March 20, 2006, the City moved for summary judgment on the complaint against all of the defendants. As to the Casalino defendants, the City sought summary judgment solely on the seventh cause of action, pursuant to which it sought damages in its capacity as a crime victim. The City argued that liability was established on that cause of action, as a matter of law, based upon the Casalino defendants' pleas of guilty to count 443 of the criminal indictment.

The Casalino defendants opposed the City's motion, arguing that they failed to contest their guilt in the criminal proceeding because they did not know that a civil action would be commenced. They alternatively argued that if their pleas of guilty had preclusive effect, it was limited to the cost of cleaning only 70 cubic yards of unclean fill dumped on November 22, 1996, since their pleas of guilty were limited to only a single count of the indictment.

The Casalino defendants' opposition to the City's motion for summary judgment was included in their broader cross motion, in which they cross-moved to dismiss all of the causes of action asserted against them pursuant to CPLR 3211 (a) (5) or, in the alternative, for summary judgment dismissing the third, fifth, sixth, and seventh causes of action insofar as asserted against them. They argued, inter alia, that the causes of action asserted against them were time-barred; that the participation of the New York City Department of Investigation (hereinafter the DOI) in the negotiation of the amount of restitution that would be paid in the criminal proceeding created an "accord and satisfaction" as to damages, barring the City's recovery of additional civil damages; and that they could not be held liable for public or statutory nuisance, common-law indemnity, or restitution, as they owed no legal duty to the City to participate in the clean-up of the College Point site.

In an order entered October 23, 2006, the Supreme Court, Queens County (Agate, J.) granted the City's motion for summary judgment on the seventh cause of action (hereinafter the crime victim cause of action). The court held that the Casalino defendants' pleas of guilty were a product of a criminal proceed-

---

**2.** The City's alleged failure to serve process upon the Casalino defendants within the 120-day period required by CPLR 306-b, measured from filing, has not been raised as an issue on appeal.

ing in which there was a full and fair opportunity to litigate their guilt, which collaterally estopped them from contesting the City's claim for money damages. The court noted that the Casalino defendants voluntarily entered pleas of guilty while represented by counsel, and that the City timely interposed the crime victim cause of action within the seven-year limitations period articulated in CPLR 213-b, as measured from November 22, 1996. As to the cross motion, the court held that all of the City's causes of action were timely, that the City was not collaterally estopped from pursuing this action, that the action was not barred by accord and satisfaction, and that the Casalino defendants failed to establish their prima facie entitlement to judgment as a matter of law in connection with their legal defenses to the causes of action sounding in public and statutory nuisance, common-law indemnity, and restitution.

The Casalino defendants appealed from so much of the order as awarded summary judgment to the City on the crime victim cause of action insofar as asserted against them, and denied their cross motion pursuant to CPLR 3211 (a) (5) to dismiss the complaint insofar as asserted against them or, in the alternative, for summary judgment dismissing the causes of action alleging common-law and statutory public nuisance, common-law indemnity, and restitution insofar as asserted against them. For the reasons set forth below, we modify the order to the extent of limiting the scope of summary judgment awarded to the City on the crime victim cause of action to the specific events of November 22, 1996, to which pleas of guilty were entered, and to grant those branches of the Casalino defendants' cross motion which were to dismiss, as time-barred, the causes of action alleging common-law and statutory public nuisance.

## II. The Crime Victim Cause of Action

A crime victim may commence an action to recover damages from a defendant convicted of a crime which is the subject of the action, for any injury or loss resulting therefrom (*see Elkin v Cassarino,* 248 AD2d 35, 40 [1998]; *Boice v Burnett,* 245 AD2d 980, 981 [1997]). CPLR 213-b, which provides a statute of limitations for crime victims, also incidentally sets forth the elements that plaintiffs must establish, namely, that (1) the plaintiff is a crime victim, (2) the defendant has been convicted of a crime, (3) the defendant's crime is the subject of the civil action, and (4) the plaintiff's injury resulted from that crime (*see Elkin v Cassarino,* 248 AD2d at 40; *Boice v Burnett,* 245 AD2d at 981).

■ In interpreting the reach of CPLR 213-b, this Court has taken an expansive approach by determining, consistent with legislative intent, that the crimes for which civil damages may be sought are not limited to Penal Law felonies (*see Elkin v Cassarino*, 248 AD2d at 38-39; *see also People v Hodges*, 246 AD2d 824, 826 [1998]). Here, we find all of the elements enumerated in CPLR 213-b to be applicable to the Casalino defendants' misdemeanor convictions resulting from their voluntary pleas of guilty to one violation each of ECL 71-2703 (2) (c) (i).

CPLR 213-b states, in pertinent part, that

"[n]otwithstanding any other limitation set forth in this article . . . an action by a crime victim . . . may be commenced to recover damages from a defendant: (1) convicted of a crime which is the subject of such action, for any injury or loss resulting therefrom *within seven years of the date of the crime*" (emphasis added).

The Casalino defendants admitted during their plea allocutions that they had released more than 70 cubic yards of solid waste at the College Point site on or about November 22, 1996,[3] in violation of ECL 71-2703 (2) (c) (i). The City's interposition of the crime victim cause of action on or before October 20, 2003 is therefore timely.

The entry of the Casalino defendants' pleas of guilty has a collateral estoppel effect on the instant civil proceeding. Collateral estoppel is based upon the notion that a party should not be permitted to relitigate issues which have previously been resolved against the party in a prior proceeding in which that party had a fair opportunity to fully litigate the point (*see Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455 [1985]; *Gilberg v Barbieri*, 53 NY2d 285, 291 [1981]; *Schwartz v Public Adm'r of County of Bronx*, 24 NY2d 65, 69 [1969]). Where a criminal conviction is based upon facts identical to those in a related civil action, the plaintiff in the civil action can successfully invoke the doctrine of collateral estoppel to bar the convicted defendant from relitigating the issue of liability (*see D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659 [1990]; *Blaich v Van Herwynen*, 37 AD3d 387, 388 [2007]; *McDonald v McDonald*, 193 AD2d 590 [1993]; *Villanueva v Comparetto*, 180 AD2d 627,

---

**3.** The "on or about" nomenclature in the indictment, used in reference to the events of November 22, 1996 is standard, and does not warrant a contrary result.

629 [1992]). The doctrine applies whether the conviction results from a plea or a trial (*see D'Arata v New York Cent. Mut. Fire Ins. Co.,* 76 NY2d at 664; *Blaich v Van Herwynen,* 37 AD3d at 388; *Lili B. v Henry F.,* 235 AD2d 512 [1997]; *McDonald v McDonald,* 193 AD2d at 591; *Grayes v DiStasio,* 166 AD2d 261, 263 [1990]). The party seeking the benefit of collateral estoppel bears the burden of proving that the identical issue was necessarily decided in the prior proceeding, and is decisive of the present action (*see Buechel v Bain,* 97 NY2d 295, 304 [2001]; *D'Arata v New York Cent. Mut. Fire Ins. Co.,* 76 NY2d at 664; *see generally Staatsburg Water Co. v Staatsburg Fire Dist.,* 72 NY2d 147, 153 [1988]; *Gilberg v Barbieri,* 53 NY2d at 291). The party against whom preclusion is sought bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination (*see Buechel v Bain,* 97 NY2d at 304; *Matter of Juan C. v Cortines,* 89 NY2d 659, 667 [1997]; *Kaufman v Eli Lilly & Co.,* 65 NY2d at 456).

Here, the Casalino defendants' admissions during their plea allocutions satisfied the "identity of issue" requirement for collateral estoppel. They specifically admitted that on November 22, 1996 they dumped more than 70 cubic yards of waste at the College Point site (*see Big Apple Leasing Corp. v Narda Microwave Corp.,* 182 AD2d 660, 661 [1992] [the defendant's plea of guilty to a criminal violation of ECL 71-2727, for the unlawful dealing of hazardous waste, is entitled to preclusive effect in a later civil proceeding]), the same location at which the City undertook remedial measures at its own expense. However, the "identity of issue" is limited to what the Casalino defendants actually admitted during their pleas—namely, that illegal dumping occurred on November 22, 1996 and that the amount of material dumped was in excess of 70 cubic yards. Since they did not admit to, and were not convicted of, any illegal behavior on any other dates, there is no identity of issue for such other dates (*see Vasquez v Wood,* 18 AD3d 645, 646 [2005]). Accordingly, the Supreme Court erred to the extent that it may have applied the doctrine of collateral estoppel to any dates relevant to the civil action other than November 22, 1996, or to any amount on that date other than that admittedly dumped by the Casalino defendants.

The Casalino defendants failed to meet their burden of demonstrating that they were not afforded a full and fair opportunity to litigate the charges in the criminal proceeding, which is the second requirement of collateral estoppel. Each of

the Casalino defendants was represented by counsel, and on the basis of the voir dire, each knowingly and voluntarily entered a plea of guilty to one count of violating ECL 71-2703 (2) (c) (i), fully aware of the rights that were being waived. These circumstances imbue their guilty pleas with preclusive effect in the civil action (*see Grayes v DiStasio,* 166 AD2d at 262-263; *Merchants Mut. Ins. Co. v Arzillo,* 98 AD2d 495, 501-502 [1984]). The defendant Frank Casalino argued, in opposition to the City's motion for summary judgment, that he and the other Casalino defendants accepted the plea offers to avoid the "time, expense and public humiliation of a trial," and there is no doubt that they were potentially facing substantial fines and incarceration if convicted of some or all of a 734-count indictment. Nevertheless, when defendants in a criminal proceeding choose to enter pleas of guilty, for reasons that are deemed good and sufficient at that time, and thereby waive the opportunity to contest the facts underlying the charge, such defendants must accept the consequences of their pleas (*see Merchants Mut. Ins. Co. v Arzillo,* 98 AD2d at 505-506). Indeed, it has been suggested that a plea of guilty to a criminal charge, where the same transaction is at issue in a civil litigation, is the clearest case for the application of collateral estoppel (*id.* at 504, citing Hazard, *Revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems,* 66 Cornell L Rev 564, 578 [1981]).

Notwithstanding the foregoing, the Court of Appeals has described the collateral estoppel doctrine as "a flexible one . . . intended merely as a framework, not a substitute, for case-by-case analysis of the facts and realities" (*Buechel v Bain,* 97 NY2d at 304; *see Gilberg v Barbieri,* 53 NY2d at 297). The Casalino defendants argue that it would be manifestly unfair to give their pleas of guilty collateral estoppel effect in light of the DOI's involvement in restitution-related negotiations, and the City's nondisclosure of its filing of an amended summons and amended complaint until after the criminal sentences had been imposed. We reject this argument. There is no credible concern that the District Attorney colluded with the City to obtain a plea to one count of a 734-count indictment to gain a tactical advantage in the civil litigation. Indeed, no cause of action implicating CPLR 213-b was even ripe until the Casalino defendants pleaded guilty to, and were convicted of, the crime (*see Vasquez v Wood,* 18 AD3d at 646; *Boice v Burnett,* 245 AD2d at 981). Moreover, we are not persuaded that the timing of the service of the City's amended summons and amended complaint warrants a contrary result.

Accordingly, the Casalino defendants' pleas of guilty to dumping in excess of 70 cubic yards of waste on November 22, 1996, in violation of ECL 71-2703 (2) (c) (i), collaterally estop them from asserting any defense that is antithetical to their pleas. The City therefore established its prima facie entitlement to judgment as a matter of law on the crime victim cause of action, to the limited extent of the admissions pertaining to November 22, 1996 (*see generally Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]; *Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065, 1067 [1979]). The Casalino defendants are collaterally estopped from raising any question of fact that would otherwise require a trial on the allocuted events of November 22, 1996 (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).[4] The City, however, failed to establish a prima facie entitlement to judgment as a matter of law as to any CPLR 213-b allegations that extend beyond the criminally-allocuted events of November 22, 1996.

III. Accord and Satisfaction

The Casalino defendants argued, both in their cross motion and on appeal, that the City's acceptance of restitution in the criminal action constituted an "accord and satisfaction," prohibiting the City from obtaining further civil damages. We disagree.

Penal Law § 60.27 (1) authorizes criminal courts within the state to include restitution or reparation[5] as part of the sentence imposed upon a person convicted of an offense. The purpose of

---

4. In any event, the Casalino defendants should be judicially estopped from taking any position or making any argument at odds with their plea allocutions. Judicial estoppel prohibits a party that has assumed a certain position in a prior legal proceeding, and that secured a judgment in its favor, from assuming a contrary position in another action simply because the party's interests have changed (*see Ford Motor Credit Co. v Colonial Funding Corp.*, 215 AD2d 435, 436 [1995]; *Kimco of N.Y. v Devon*, 163 AD2d 573, 574 [1990]; *Environmental Concern v Larchwood Constr. Corp.*, 101 AD2d 591, 593 [1984]). Here, the lenient plea and sentence in the criminal proceedings, consisting of the pleas of guilty to a single count of a 734-count indictment, resulting in a conditional discharge, restitution, and the imposition of no fine or probation, constitutes a favorable judgment for purposes of the doctrine of judicial estoppel (*see Festinger v Edrich*, 32 AD3d 412, 413 [2006]).

5. The terms "restitution" and "reparation" are not specifically defined within the Penal Law (*see* Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 60.27, 2008 Pocket Part, at 183). Certain decisional authorities view the difference in the terms as quantitative, that restitution is the return of all fruits of a crime while reparation is the partial return of as much as the defendant can afford (*see People v Purcell*, 161 AD2d

the statute, which contains various due process safeguards, is to ease a crime victim's financial burdens attributable to the crime, while reinforcing the offenders' responsibility for harm caused by their acts (*see People v Horne,* 97 NY2d 404, 411 [2002]; *People v Kim,* 91 NY2d 407, 412 [1998]). The amount of restitution cannot exceed the sum necessary to compensate the crime victim for out-of-pocket loss (*see* Penal Law § 60.27 [1]; *People v Consalvo,* 89 NY2d 140, 144 [1996]; *People v Dickson,* 260 AD2d 931, 933 [1999]).

Municipal entities may, as crime victims, receive restitution in the disposition of criminal proceedings based not only upon their involuntary incurrence of an out-of-pocket loss, but also from legal obligations directly and causally related to the crime itself (*see People v Cruz,* 81 NY2d 996, 998 [1993]). Accordingly, municipalities have received restitution in their capacity as crime victims to compensate them for, inter alia, obligatory costs of medical treatment and sick leave for a police officer injured by criminal activity (*see People v Cruz,* 81 NY2d at 998), lost tax revenue caused by criminal tax fraud (*see People v Nelson,* 38 AD3d 472, 473 [2007]), and repair costs for municipal property damaged by criminal conduct (*see People v Barnett,* 237 AD2d 917, 918 [1997]). By contrast, municipalities have been denied restitution for expenses incurred in prosecuting crime (*see People v Stacey,* 173 AD2d 960, 962 [1991]; *People v Pfaudler,* 164 AD2d 873 [1990]; *People v Purcell,* 161 AD2d at 812-813), extraditing defendants (*People v Dulanski,* 175 AD2d 672 [1991]), transporting prisoners (*see People v Watson,* 197 AD2d 880 [1993]; *People v Snow,* 180 AD2d 698, 699 [1992]; *People v Raines,* 157 AD2d 874, 875 [1990]), and providing electronic monitoring programs (*see People v Bennor,* 228 AD2d 745 [1996]), as such expenses are voluntarily incurred within the usual and customary scope of governmental operations. The requirement of the Casalino defendants' criminal sentences, that they pay restitution toward the City's costs of cleaning up and regrading the College Point site, is consistent with the purpose and intent of Penal Law § 60.27.

Penal Law § 60.27 (6) further provides that the payment of restitution or reparation as part of a criminal disposition " 'shall

---

812 [1990]; *People v White,* 119 AD2d 708, 709 [1986]; *People v Young,* 163 Misc 2d 72, 77 [1994]). We shall refer to the sentence obligation here as restitution rather than reparation, since restitution was the term used by the criminal court. However, since the City claims damages of $16.5 million, any partial payment by the Casalino defendants might arguably be "reparation" under the definition suggested by *Purcell, White* and *Young.*

not limit, preclude or impair any liability for damages in any civil action or proceeding for an amount in excess of such payment' " (*Farber v Stockton,* 128 Misc 2d 560, 562 [1985], quoting Penal Law § 60.27 [6]; *accord A. v B.,* 121 Misc 2d 750, 752 [1983]). Double jeopardy is not a bar to the commencement of the subsequent civil action (*see Harvey-Cook v Steel,* 124 AD2d 709 [1986]). The right of crime victims to seek civil damages beyond the amount of restitutionary payments made under Penal Law § 60.27 has been specifically recognized in favor of municipal and governmental crime victims (*see State of New York v Stokols,* 234 AD2d 222, 223 [1996]; *Harvey-Cook v Miroff,* 130 AD2d 621, 622 [1987]; *Harvey-Cook v Steel,* 124 AD2d at 709). The amount of money paid by a criminal offender as restitution must be deducted from the amount of damages otherwise due to the crime victim in the subsequent civil proceeding (*see State of New York v Stokols,* 234 AD2d at 223; *Harvey-Cook v Miroff,* 130 AD2d at 622; *Kuriansky v Professional Care,* 147 Misc 2d 782, 785 [1990]; *see also Kuriansky v Professional Care,* 158 AD2d 897 [1990]), to avoid the possibility of a duplicative civil recovery.

Here, the restitutionary component of the Casalino defendants' sentence was negotiated between the District Attorney and criminal defense counsels, with the additional involvement of the DOI. The Casalino defendants argue, in effect, that the DOI, when participating in the plea negotiations that resulted in, inter alia, a restitution agreement, was acting as the City's agent for the forthcoming civil litigation. They further argue that the negotiated amount of restitution represents an accord and satisfaction of the City's civil damages claim, and that the City is therefore estopped from seeking further damages.

█ This argument is without merit, as the City and the District Attorney are separate and independent entities for the purpose of a collateral estoppel analysis (*see Brown v City of New York,* 60 NY2d 897, 898-899 [1983]; *Matter of Saccoccio v Lange,* 194 AD2d 794, 795 [1993]). The involvement of the City's DOI in negotiating the amount of restitution to be paid was not on behalf of the City as a prospective civil plaintiff, but rather, was on behalf of the City in its role as a crime victim. Indeed, the District Attorney's office would not have been in a position to negotiate an appropriate amount of restitution as part of a broader plea package without direct input from the City on the remedial expenses it had incurred at the College Point site. Since the District Attorney was entitled under Penal Law

§ 60.27 (1) to negotiate and recommend criminal pleas that would include a restitutionary component, and since the City is authorized by statute to seek additional civil damages in accordance with Penal Law § 60.27 (6), the DOI's participation in preplea discussions regarding restitution is not sufficient, in and of itself, to estop the City from proceeding further with its civil claims.

## IV. Common-Law Indemnity and Common-Law Restitution

The DOS orders dated October 31, 1997 and March 24, 1998, respectively, directed CPSA and Enviro-Fill to remove unclean material from the College Point site. The orders did not name, and were not directed to, the Casalino defendants, nor were the Casalino defendants parties to the OATH hearing or the subsequent CPLR article 78 proceeding. The Casalino defendants contend that the Supreme Court erred in denying that branch of their cross motion which was for summary judgment dismissing the City's causes of action sounding in common-law indemnity and for restitution, since the DOS orders never placed them under any legal duty to perform any cleanup at the College Point site. Clearly, absent a duty there can be no breach of duty, and absent breach, there can be no damages (*see generally Pulka v Edelman,* 40 NY2d 781, 785 [1976]; *see also* Prosser and Keeton, Torts § 53, at 357 [5th ed]).

Contrary to the Casalino defendants' contentions, the City's causes of action sounding in common-law indemnity and for restitution were not predicated solely upon the DOS orders dated October 31, 1997 and March 24, 1998. The City specifically alleges in its cause of action sounding in common-law indemnity that the Casalino defendants are liable based upon "applicable orders, case law, statutes, rules and regulations, including, but not limited to, the [DOS order]." The same specific allegation is asserted in the City's cause of action seeking restitution. The common law embodied in case law provides the legal predicate for the City's indemnity and restitution claims, independent of the identity of the parties who were the subjects of the DOS orders of October 31, 1997 and March 24, 1998.

Common-law indemnity and restitution are separate and discrete causes of action with different essential elements, although both are permeated by the same underlying equitable concerns involving unjust enrichment (*see City of New York v Lead Indus. Assn.,* 222 AD2d 119, 124 [1996]). There are two categories of indemnity—contractual, which is not at issue here,

and common-law (*see Mauro v McCrindle,* 70 AD2d 77, 80 [1979], *affd* 52 NY2d 719 [1980]). The Court of Appeals, quoting section 76 of the Restatement (First) of Restitution, has defined common-law indemnity in the following terms: "It is nothing short of simple fairness to recognize that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled [by equity] to indemnity' " (*McDermott v City of New York,* 50 NY2d 211, 217 [1980], quoting Restatement [First] of Restitution § 76). It is not necessary that the indemnitee establish that the indemnitor ever owed, or currently owes, a separate duty apart from the duty to indemnify (*see Raquet v Braun,* 90 NY2d 177, 183 [1997]; *Mas v Two Bridges Assoc.,* 75 NY2d 680, 690 [1990]; *City of New York v Lead Indus. Assn.,* 222 AD2d at 125; *Mauro v McCrindle,* 70 AD2d at 81). By comparison, a cause of action for restitution is stated when

" '[a] person who has performed the duty of another by supplying things or services although acting without the other's knowledge or consent, is entitled to restitution from the other if (a) he acted unofficiously and with intent to charge therefor, and (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety' " (*City of New York v Lead Indus. Assn.,* 222 AD2d at 125, quoting Restatement [First] of Restitution § 115).

The primary differences between common-law indemnity and restitution appear to be twofold. First, a plaintiff seeking common-law indemnity must have acted to discharge a duty which more properly should have been discharged by the indemnitor, whereas a plaintiff seeking restitution must have acted not pursuant to a duty, but to satisfy the more generalized requirements of public decency, health, or safety (*see City of New York v Lead Indus. Assn.,* 222 AD2d at 125). Second, the measure of damages for common-law indemnity is the reimbursement of actual expenditures, whereas damages in restitution are more limited to the reasonable costs of abatement, which is not necessarily the amount expended (*id.; see State of New York v Schenectady Chems.,* 103 AD2d 33, 39 [1984]).

█ █ Applying the foregoing principles to the facts at bar, the Casalino defendants, in cross-moving for summary judgment, failed to establish a prima facie entitlement to judgment as a matter of law dismissing either the City's common-law indemnity or restitution causes of action. The omission of their names

from the DOS orders is of no significance, as the City's common-law indemnity and restitution causes of action are predicated upon common-law principles independent of the DOS orders. Moreover, the causes of action describe an obligation that is alleged to have arisen between the Casalino defendants and the City as a result of the City's remedial efforts at the College Point site, undertaken in fulfillment of the City's own statutory duties or its general duty to protect the public from potential health or safety hazards. At common law, no additional privity or duty need exist between the Casalino defendants and the City. The submissions made by the Casalino defendants on their cross motion failed to establish that the remedial expenses incurred by the City were not a product of either governmental duty, as relevant to the indemnity claim, or necessary to protect the public health and safety, as relevant to the restitution claim (*see City of New York v Lead Indus. Assn.*, 222 AD2d at 124-126). The Supreme Court's denial of summary judgment to the Casalino defendants as to these two causes of action was therefore proper.

V. The Common-Law and Statutory Public Nuisance Causes of Action

The Supreme Court denied those branches of the Casalino defendants' cross motion which were pursuant to CPLR 3211 (a) (5) to dismiss, as time-barred, the City's causes of action alleging common-law and statutory public nuisance insofar as asserted against them. The Casalino defendants argued before the Supreme Court, and reiterate on appeal, that both of these causes of action are barred by the three-year statute of limitations applicable to nuisance, as set forth in CPLR 214 (4) and (2), respectively. The City correctly conceded in its brief, and confirmed during its oral argument, that both nuisance causes of action were time-barred to the extent not encompassed in the seventh cause of action, i.e., the crime victim cause of action. Accordingly, the causes of action alleging common-law and statutory public nuisance should have been dismissed as time-barred.

The Casalino defendants' remaining contentions either are without merit or have been rendered academic by our determination.

Thus, the order is modified, on the law, (1) by deleting the provision thereof granting that branch of the plaintiffs' motion which was for summary judgment on the issue of liability on the seventh cause of action insofar as asserted against the defendants Frank Casalino, Anthony Casalino, and Joseph Casa-

lino based on those defendants' alleged acts of unlawful dumping on dates other than November 22, 1996, and substituting therefor a provision denying that branch of the motion, (2) by deleting the provision thereof denying that branch of the cross motion of the defendants Frank Casalino, Anthony Casalino, and Joseph Casalino which was for summary judgment dismissing so much of the seventh cause of action insofar as asserted against them as was to recover damages arising from their alleged acts of unlawful dumping on dates other than November 22, 1996, and substituting therefor a provision granting that branch of the cross motion, and (3) by deleting the provision thereof denying those branches of the cross motion which were pursuant to CPLR 3211 (a) (5) to dismiss, as time-barred, the second and third causes of action alleging common-law and statutory public nuisance and substituting therefor a provision granting those branches of the cross motion; as so modified, the order is affirmed insofar as appealed from.

MILLER, McCARTHY and CHAMBERS, JJ., concur.

Ordered that the order is modified, on the law, (1) by deleting the provision thereof granting that branch of the plaintiffs' motion which was for summary judgment on the issue of liability on the seventh cause of action insofar as asserted against the defendants Frank Casalino, Anthony Casalino, and Joseph Casalino based on those defendants' alleged acts of unlawful dumping on dates other than November 22, 1996, and substituting therefor a provision denying that branch of the motion, (2) by deleting the provision thereof denying that branch of the cross motion of the defendants Frank Casalino, Anthony Casalino, and Joseph Casalino which was for summary judgment dismissing so much of the seventh cause of action insofar as asserted against them as was to recover damages arising from their alleged acts of unlawful dumping on dates other than November 22, 1996, and substituting therefor a provision granting that branch of the cross motion, and (3) by deleting the provision thereof denying those branches of the cross motion which were pursuant to CPLR 3211 (a) (5) to dismiss, as time-barred, the second and third causes of action alleging common-law and statutory public nuisance and substituting therefor a provision granting those branches of the cross motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.