Kokoska v Joe Tahan's Furniture Liquidation Ctrs., Inc. (2025 NY Slip Op 04130)

Kokoska v Joe Tahan's Furniture Liquidation Ctrs., Inc.

2025 NY Slip Op 04130

Decided on July 10, 2025

Appellate Division, Third Department

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 10, 2025

CV-23-2277

[*1]Charles Kokoska, Appellant-Respondent,
v
Joe Tahan's Furniture Liquidation Centers, Inc., et al., Respondents-Appellants.

Calendar Date:May 29, 2025

Before: Garry, P.J., Clark, Lynch, Reynolds Fitzgerald and McShan, JJ.

Melvin & Melvin, PLLC, Syracuse (Kenneth J. Bobrycki of counsel), for appellant-respondent.
Armond J. Festine, Utica, for respondents-appellants.

Lynch, J.
Cross-appeals from an order of the Supreme Court (Patrick O'Sullivan, J.) entered November 28, 2023 in Madison County, which (1) denied defendants' motion for summary judgment dismissing the complaint, and (2) denied plaintiff's cross-motion for, among other things, summary judgment and to exclude certain facts from trial.
Plaintiff began working as a full-time employee of defendant Joe Tahan's Furniture Liquidation Centers, Inc. (hereinafter defendant) in 2015 at an annual salary of $80,000. Defendant is a retail furniture business with multiple outlets and warehouses. The parties dispute plaintiff's job functions during the course of his employment. Plaintiff alleges that he was employed as a "[c]omputer [r]epairman" providing technical support services to defendant's employees. Defendants counter that plaintiff was employed in an administrative capacity performing managerial functions akin to a Director of Information Technology or Chief Information Officer.
After a contentious separation from employment in September 2018, plaintiff commenced this action to recover unpaid wages and overtime compensation under the federal Fair Labor Standards Act (hereinafter FLSA) and the New York Labor Law, and asserted causes of action for fraudulent conversion, trespass to chattels, unjust enrichment and goods sold. Plaintiff alleged that he had not been paid his regular wages for the last four weeks of his employment and was entitled to outstanding overtime compensation for hours worked in excess of 40 hours per week. The conversion and other property-based causes of action were premised upon two allegations: (1) that defendants owed plaintiff money for "computers, monitors, printers and other technology" he had provided during the course of his employment, which defendants were allegedly retaining for use in their stores; and (2) defendants refused to return personal equipment plaintiff stored on their premises.
Defendants answered and interposed a counterclaim for damages. Defendants denied plaintiff's claim for unpaid wages for the last four weeks of his employment on the ground that they had tendered plaintiff's final paycheck but he refused to retrieve it. Regarding the claim of outstanding overtime compensation, defendants alleged that plaintiff's administrative job functions rendered him exempt from the overtime compensation provisions of FLSA and the Labor Law (see 29 USC § 213 [a] [1]; 12 NYCRR 142-2.2). As for plaintiff's conversion and property-related claims, defendants admitted that plaintiff purchased "various equipment and accessories" during the course of his employment, but alleged that he had been "duly reimbursed in full for such purchases" and had retrieved the personal equipment he was storing on the premises in April 2019. Defendants' counterclaim alleged that, after plaintiff was advised that his employment was being terminated in September 2018, he took a series of actions that damaged their computer system and disrupted their business [*2]activities, including refusing to provide defendants with passwords to access their system, requiring retention of a third-party computer professional to gain entry. Defendants further alleged, among other things, that after they regained access to their system plaintiff "did, on at least two occasions by using remote access . . . , cause the system to shut down, become inoperable, and otherwise create a significant business interruption."
Following discovery, defendants moved for summary judgment dismissing the complaint. Attached to defendants' motion were documents from a criminal action brought against plaintiff in Oneida County regarding the allegations forming the basis of their counterclaim, including, among other things, a copy of an indictment and a transcript from a combined plea and sentencing proceeding in front of County Court during which plaintiff pleaded guilty to a disorderly conduct violation (see Penal Law § 240.20) in satisfaction of the indictment and was directed to pay restitution. Defendants also attached a transcript of a recorded conversation between plaintiff and District Attorney investigator Brad Pietryka (hereinafter the Pietryka recording) — made during the execution of a search warrant before the indictment was handed down — in which plaintiff made certain inculpatory statements regarding the business interruption claim and comments relevant to his employment duties.
Plaintiff, in turn, cross-moved for an order, among other things, (1) excluding "all testimony, documents, materials, records, information or reference in any way" related to his criminal prosecution from being admitted at trial, emphasizing that a sealing order had been issued by County Court in May 2022 pursuant to CPL 160.55; (2) dismissal of defendants' counterclaim on the ground that it had been rendered moot by plaintiff's payment of restitution in the criminal case; and (3) judgment as a matter of law on his claim for unpaid regular and overtime wages under FLSA and the Labor Law.
Supreme Court denied both motions in full. As for plaintiff's motion in limine to preclude information about the criminal proceeding from admission at trial, the court concluded that plaintiff waived the confidentiality protections afforded by the sealing order issued under CPL 160.55 because he "affirmatively place[d] the information protected by the statute in issue" by commencing a civil action. The court otherwise concluded that questions of fact existed regarding plaintiff's claims and defendants' counterclaim, rendering judgment as a matter of law in favor of any party inappropriate. These cross-appeals ensued.
To begin, we disagree with Supreme Court's waiver rationale for the denial of plaintiff's motion in limine and, for the reasons set forth below, conclude that plaintiff's motion in limine should be remitted to Supreme Court for further consideration. Although a plaintiff who "commences a civil action and affirmatively places the information protected [*3]by [a sealing order] into issue" waives the confidentiality protections of CPL 160.55 (Wright v Snow, 175 AD2d 451, 452 [3d Dept 1991], lv dismissed 79 NY2d 822 [1991]; see Matter of Weigand [Elbridge True Value Hardware-Hudacs], 187 AD2d 791, 792 [3d Dept 1992]), the indictment and plea/sentencing transcript are not relevant to plaintiff's claims. Instead, these documents are relevant to defendants' counterclaim for business interruption losses allegedly caused by plaintiff's posttermination conduct. By invoking the privilege afforded by CPL 160.55 in moving to preclude defendants' use of these documents in support of their counterclaim, plaintiff is doing so in a defensive posture and not as a sword to gain an advantage in the litigation. Therefore, "the rationale for finding that the privilege was waived was not present" as it pertains to the indictment and transcript from the plea/sentencing proceeding (Matter of Scott D., 13 AD3d 622, 623 [2d Dept 2004]; see Matter of City of Elmira v Doe, 39 AD3d 942, 944-945 [3d Dept 2007], affd 11 NY3d 799 [2008]).
We must next decide whether CPL 160.55 in fact encompasses the content that plaintiff seeks to have excluded from trial. After plaintiff entered a guilty plea to disorderly conduct in the criminal action, County Court issued a sealing order pursuant to CPL 160.55, which applies when an action has been terminated by a conviction of certain violations, including disorderly conduct.[FN1] Upon such a conviction, "the clerk of the court wherein such criminal action or proceeding was terminated shall immediately notify the commissioner of the division of criminal justice services and the heads of all appropriate police departments and other law enforcement agencies" (CPL 160.55 [1]). "Upon receipt of notification of such termination" (CPL 160.55 [1]), "all official records and papers relating to the arrest or prosecution, including all duplicates and copies thereof, on file with the division of criminal justice services, police agency, or prosecutor's office shall be sealed and not be made available to any person or public or private agency" (CPL 160.55 [1] [c]). CPL 160.55 (1) (d) enumerates a procedure by which sealed records may be unsealed and made available to certain individuals in limited circumstances, primarily for investigatory purposes by law enforcement.
Defendants do not dispute that the indictment and transcript from the combined plea/sentencing proceeding before County Court are "official records and papers" related to plaintiff's "arrest or prosecution" within the meaning of CPL 160.55 (1) (c) (see Matter of County of Nassau v Heine, 80 AD2d 640, 640 [2d Dept 1981], lv denied 53 NY2d 607 [1981]; Matter of Hynes v Karassik, 63 AD2d 597, 598 [1st Dept 1978], affd 47 NY2d 659 [1979]). Rather, they emphasize that, unlike CPL 160.50 — which seals court records related to a prosecution that has terminated in an accused's favor (see CPL 160.50 [3]) — court records are not sealed under CPL 160.[*4]55; only records maintained by one of the aforementioned criminal justice entities are sealed (see People v Pettinato, 22 Misc 3d 140[A], 2009 NY Slip Op 50394[U], *1-2 [App Term, 9th & 10th Jud Dists 2009]).
"In matters of statutory interpretation, our primary consideration is to discern and give effect to the Legislature's intention" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120 [2012] [citation omitted]; see Matter of Estate of Youngjohn v Berry Plastics Corp., 36 NY3d 595, 603 [2021]). To that end, the statutory text "is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]). Courts should also consider "the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history" (Nostrom v A.W. Chesterton Co., 15 NY3d 502, 507 [2010] [internal quotation marks and citations omitted]). Doing so here warrants a comparison of the companion sealing provisions: CPL 160.50 and 160.55.
A careful comparison of the language used in CPL 160.50 and 160.55 leads us to agree with defendants' contention that CPL 160.55 does not extend to court records. Under CPL 160.55 (1) (c), once notified of a qualifying violation conviction, the enumerated criminal justice entities must seal "all official records and papers relating to the arrest or prosecution" in their possession. By comparison, CPL 160.50 (1) provides that, when an action has been terminated in favor of the accused, unless the court requires otherwise, "the record of [an] action or proceeding shall be sealed" and notification of such termination and sealing shall be sent by the clerk of the court to the "the commissioner of the division of criminal justice services and the heads of all appropriate police departments and other law enforcement agencies" (emphasis added). Upon receipt thereof, "all official records and papers, including judgments and orders of a court but not including published court decisions or opinions or records and briefs on appeal, relating to the arrest or prosecution, including all duplicates and copies thereof, on file with the division of criminal justice services, any court, police agency, or prosecutor's office shall be sealed and not made available to any person or public or private agency" (CPL 160.50 [1] [c] [emphasis added]). By its plain terms, CPL 160.50 seals official court records pertaining to the arrest and prosecution, whereas CPL 160.55 omits that express sealing (see People v Anonymous, 34 NY3d 631, 657 n 5 [2020, DiFiore, Ch. J., dissenting]).
Notably, the legislative bill jacket to CPL 160.55 clarifies that this omission was a deliberate choice, explaining that, "unlike CPL 160.50 [(1) (c)], there is no blanket provision for the sealing of the records of the case . . . [and] those [*5]maintained by the courts . . . are not to be sealed" — the articulated rationale being that "a conviction of a violation or traffic infraction, though not amounting to a conviction for a crime, is nonetheless a conviction for a criminal offense. It is not an acquittal or dismissal of the charges so as to constitute a favorable disposition under CPL 160.50 (2) that entitles the subject to a sealing of all the records of the event" (Amended Assembly Mem in Support at 3, Bill Jacket, L 1980, ch 192; see William C. Doninno, Prac Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 160.55 at 459; NY State Unified Court System, Quick Reference - Criminal Case Sealing Process at 3 [Rev 7/11], available at https://www.nycourts.gov/legacyMembersOnly/courts/9jd/tv-members-only/pdfs_forms/
QuickReference_CriminalSealing.pdf ["Although sealed by all outside agencies, these records are not sealed by the court and remain open to the public" (emphasis omitted)]).
We are mindful that the record does not reveal how defendants obtained copies of the indictment and combined plea/sentencing transcript. To the extent defendants obtained these documents from the official court file maintained by County Court, they would not be subject to the sealing order issued pursuant to CPL 160.55. However, if these documents were obtained from the files of "the division of criminal justice services, police agency, or prosecutor's office" (CPL 160.55 [1] [c]), they would be subject to the sealing order.[FN2] As explained earlier, plaintiff did not waive the privilege that is afforded to these documents in the event they were obtained from one of the aforementioned law enforcement entities. Given that the record is not sufficiently developed on the issue of how these records were obtained, we must reverse so much of Supreme Court's order as denied plaintiff's motion in limine as it pertains to the indictment and plea/sentencing transcript and remit to Supreme Court for further proceedings on the matter.
As for the Pietryka recording, which we conclude constitutes an "official record" related to plaintiff's arrest and prosecution contemplated by CPL 160.55 (1) (c) (see Matter of Dondi, 63 NY2d 331, 337 [1984]), defendants maintain, without contradiction, that they obtained the recording directly from plaintiff's counsel and not one of the entities listed in the statute. Accordingly, this statement is not subject to the sealing order.
Turning to the remaining issues on appeal, we conclude that Supreme Court properly denied the parties' respective motions for summary judgment. As for plaintiff's claim for outstanding overtime wages, under both FLSA and the Labor Law, employees who work in excess of 40 hours per week must be compensated at a rate not less than 1½ times the regular rate of payment (see 29 USC § 207 [a] [1]; Labor Law § 650 et seq.; 12 NYCRR 142-2.2). These overtime provisions do not apply when the employee is "employed in a bona fide executive, administrative, or professional [*6]capacity" (29 USC § 213 [a] [1]; see 12 NYCRR 142-2.2). "An 'employee employed in a bona fide administrative capacity' is defined as an employee earning not less than [a certain level][[FN3]] per week, '[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers,' and who exercises discretion and independent judgment in performing his or her duties" (Lichtman v Martin's News Shops Mgt., Inc., 81 AD3d 696, 698 [2d Dept 2011], quoting 29 CFR 541.200 [a] [2]; see Matter of Conners [Commissioner of Labor], 9 AD3d 703, 705 [3d Dept 2004], lv denied 3 NY3d 609 [2004], cert denied 544 US 1034 [2005]). "[T]he administrative exemption is narrowly construed against the employer and will be applied only where the employee fits plainly and unmistakably within its terms" (Matter of Scott Wetzel Servs. v New York State Bd. of Indus. Appeals, 252 AD2d 212, 214 [3d Dept 1998]). "The question of how the [employee] spent [his or her] working time . . . is a question of fact. The question whether [the employee's] particular activities excluded [him or her] from the overtime benefits of
. . . FLSA is a question of law" (Icicle Seafoods, Inc., v Worthington, 475 US 709, 714 [1986]).
The evidence in support of dismissing the claim for overtime compensation included affidavits from defendant's executives who averred, among other things, that plaintiff was employed as an Information Technology Director and was responsible for maintaining the entire computer network for the business. Plaintiff was not required to document his hours while working for defendant, was permitted to work from home, and his job functions, as described by defendant's executives, included administering the system network, building custom software programs and providing IT services to employees. Plaintiff confirmed several aspects of these job functions during his deposition and, in an email to defendant's vice president in May 2016, requested that the parties "formalize [his] job title and description" to avoid the possibility of having to pay him overtime compensation. Notably, the signature block of two emails plaintiff wrote to third parties during the course of his employment used the designation "Chief Information Officer" in reference to his job title. In these circumstances, defendants made a prima facie showing that plaintiff was exempt from the overtime compensation requirements of FLSA and the Labor Law (see Lichtman v Martin's News Shops Mgt., Inc., 81 AD3d at 698-699; Matter of Conners [Commissioner of Labor], 9 AD3d at 705).
However, plaintiff raised a triable issue of fact in opposition. Defendant's executives acknowledged that plaintiff's job duties were never reduced to writing and plaintiff presented evidence contradicting the assertion that he was able to act independently and use substantial discretion in the performance of his duties. Evidence submitted in support [*7]of plaintiff's cross-motion tended to support his representation that a significant portion of his job functions involved manual tasks, including an acknowledgement by defendant's vice president that plaintiff spent time repairing computers and equipment during the course of his employment. In his own affidavit, plaintiff asserted that "[n]o less than 75% of [his] primary job duties were physical and manual, as opposed to office type work." Plaintiff also submitted an affidavit from Timothy Reed, a cybersecurity expert who had previously worked with and supervised personnel in both exempt and nonexempt positions, who opined that plaintiff was incorrectly classified as an exempt employee given that "nearly all of his time was spent performing 'manual' work, such as cabling, installing, repairing and maintaining technology." When plaintiff was confronted during his deposition about the fact that he had represented himself as defendant's Chief Information Officer in various emails written during the course of his employment, plaintiff explained that he did so at the direction of defendant's president, who wanted to demonstrate to third parties that the company had a dedicated information technology team. In these circumstances, we cannot agree with defendants that the evidence establishes "only a feigned issue of fact" (Estate of Mirjani v DeVito, 135 AD3d 616, 617 [1st Dept 2016]). To the contrary, we find that material factual questions exist regarding the degree of plaintiff's administrative employment functions while working for defendant and the extent to which he exhibited discretion and independent judgment in the course of his employment. These outstanding factual questions preclude judgment as a matter of law in favor of either party on the overtime compensation claim (see Albertin v Nathan Littauer Hosp. & Nursing Home, 537 F Supp 3d 243, 259-261 [ND NY 2021]; Panora v Deenora Corp., 467 F Supp 3d 38, 42-44 [ED NY 2020]).
As for plaintiff's claim for unpaid wages for the last four weeks of his employment, plaintiff acknowledges in his appellate brief that he has since been paid his regular wages for the last four weeks of his employment. He argues, however, that he is entitled to liquidated damages and counsel fees under Labor Law § 198 (1-a) as a result of the late payment. We cannot conclude as a matter of law on this record that defendants' delayed payment entitles plaintiff to liquidated damages under Labor Law § 198 (1-a) (see Gold v New York Life Ins. Co., 730 F3d 137, 143 [2d Cir 2013]). Accordingly, Supreme Court properly denied so much of plaintiff's cross-motion as sought judgment as a matter of law in this regard.
Supreme Court also properly denied plaintiff's cross-motion for summary judgment seeking dismissal of defendants' counterclaim for damages on the basis that it was rendered moot by his payment of restitution in the criminal matter. As recognized by Supreme Court, Penal Law § 60.27 (6) provides that "[a]ny payment made [*8]as restitution or reparation pursuant to this section shall not limit, preclude or impair any liability for damages in any civil action or proceeding for an amount in excess of such payment" (see City of New York v College Point Sports Assn., Inc., 61 AD3d 33, 45-46 [2d Dept 2009]). Defendants' counterclaim seeks both compensatory damages in the restitution amount and punitive damages above this amount based upon plaintiff's allegedly willful and malicious conduct in causing a network outage that disrupted defendant's business operations (see Marion Blumenthal Trust v Arbor Commercial Mtge., LLC, 133 AD3d 419, 420 [1st Dept 2015]; City of New York v College Point Sports Assn., Inc., 61 AD3d at 45-46; State of New York v Stokols, 234 AD2d 222, 223 [1st Dept 1996]).[FN4] There is a triable issue of fact as to whether plaintiff was involved in the network outage and, if so, whether his conduct was willful and malicious (see PJI 2:278). For the same reason, defendants' counterclaim cannot be decided as a matter of law at this juncture and Supreme Court properly denied their request for summary judgment on liability in this regard. Defendants' motion for summary judgment dismissing the conversion and unjust enrichment claims was also properly denied, as there are triable issues of fact as to whether any outstanding compensation is owed to plaintiff for the equipment he purchased during the course of his employment and, if so, the amount.[FN5] The parties' remaining contentions, to the extent not expressly addressed, have been considered and found unavailing.[FN6]
Garry, P.J., Clark, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is modified, on the law and the facts, without costs, by reversing so much thereof as denied plaintiff's motion in limine seeking to preclude admission of the criminal indictment and combined plea/sentencing transcript from evidence in support of defendants' counterclaim; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: A violation of driving while ability impaired as described in Vehicle and Traffic Law § 1192 (1) is exempted from the sealing provisions of CPL 160.55.

Footnote 2: We note that plaintiff's motion in limine sought the exclusion of "all testimony,
. . . information or reference[s] in any way" related to the criminal proceeding from admission in this case. However, the sealing provisions of CPL 160.55 apply only to official records and papers related to the prosecution (see CPL 160.55 [1] [c]). As such, our determination should not be construed as precluding any and all information about the criminal proceeding from being introduced in evidence at trial, only admission of the actual indictment and plea/sentencing transcript (if they were obtained from an unauthorized source, i.e., the division of criminal justice services, police agency or prosecutor's office).

Footnote 3: At the time of plaintiff's termination, the level was set at $913 per week (see 81 Fed Reg 32391, 32393 [Executive Summary, May 23, 2016]). Plaintiff's salary well exceeded this limit.

Footnote 4: The cases cited by plaintiff for the proposition that punitive damages are not available in this case are inapposite.

Footnote 5: It is unclear if plaintiff is still pursuing so much of the conversion claim as sought the return of his personal equipment allegedly being stored at defendants' premises. Although plaintiff admitted during his deposition that defendants had returned his personal belongings being stored at one of defendants' locations, we cannot determine on this record whether any additional personal equipment remains outstanding.

Footnote 6: The parties make no arguments directed at the additional property-related causes of action set forth in plaintiff's complaint.