Leon D. Lazeb, J.
Plaintiff has instituted a class action against the Commissioners of Election of Suffolk County, the Town Board of the Town of Brookhaven and its Town Clerk. The complaint seeks declaratory judgment that the action of the ‘ ‘ Town Board of October 3,1972, and all actions taken thereafter, including the November 7, 1972 election on the Ward System issue, be under Section 85 of the Town Law, declared null and void that chapter 841 of the Laws of 1959 bars the establishment of a ward system; and for ancillary relief. What action was taken by the Town Board on October 3, 1972, is not specified.
In pursuance of this remedy, the plaintiff moved for a preliminary injunction by order to show cause returnable February 5, 1973. Defendant Commissioners of Election cross-moved for dismissal returnable the same day.
On February 5, 1973, the attorneys for the parties appeared before the court and the oral application of George A. Hockbrueckner to intervene as a defendant was granted on consent of the parties. The attorney for defendant Town Board .then said that he was not ready to proceed. The court stated to the parties its view that there was a great need for speed in the disposition of the case in view of the impending town election. The matter was adjourned to February 6, 1973. On that date, the defendants appeared and were ready but the attorney for the plaintiff informed the court that he was being substituted by *61 the firm of Mudge, Bose, Guthrie & Alexander, and sought an adjournment for their appearance. Because no written substitution stipulation was submitted, the court refused to grant counsel’s application to withdraw since that would have left plaintiff unrepresented as of record. The case was adjourned to February 8, 1973, and marked peremptorily against all parties. Plaintiff’s attorney was directed to notify the firm which was ostensibly to replace him. In the meantime, plaintiff served an amended summons and complaint on the defendants.
On' February 8, 1973, all parties appeared and plaintiff’s motion papers were before the court. Plaintiff’s same attorney stated that a “ Mr. Levinson ” of Mudge Bose had asked him to request a two-week adjournment. Again no stipulation of substitution was submitted. The application for adjournment was denied and John Bellport and the Conservative Party of the Town of Brookhaven were permitted to intervene on consent of all parties. The respective motions were then argued. Plaintiff’s attorney, although seated in the courtroom, made no argument. During argument, the court stated that it would treat the motion to dismiss as directed to the amended complaint. No objection was made to this procedure. All parties were given until the close of business on February 13,1973, to file additional papers, if they cared to do so. Upon inquiry as to the address of the firm of Mudge Bose, the plaintiff’s attorney asserted that all papers should continue to be served upon him.
On February 13, 1973, the court received from one, Bruce Leader, a notice withdrawing the motion for a preliminary injunction. Attached to the notice was a stipulation, dated February 9, 1973, substituting Mr. Leader for prior counsel for plaintiff, and a copy of a letter addressed to the County Attorney stating that it was Mr. Leader’s “ understanding that you stated in Court on Thursday, February 1, 1973 [sic] that you were withdrawing your Cross Motion ” because of the amended complaint. The court remembers no such withdrawal. In any event cross motions to dismiss returnable February 13, 1973, were made by intervenors-defendants Bellport and Hockbrueckner. The latter’s attorney objected by letter to the withdrawal of plaintiff’s motion for a temporary injunction and asked for dismissal of the entire proceeding. The letter indicated that copies were served on all parties. On February 15, 1973, Mr. Leader wrote to the court asserting that the two most recent cross motions were nullities because of insufficient notice.
Three procedural issues should be dealt with before the merits are reached.
*62 A motion may be withdrawn as of right at any time before it is submitted (Oshrin v. Celanese Corp. of Amer., 37 N. Y. S. 2d 548, affd. 265 App. Div. 923, affd. 291 N. Y. 170), and even at the call of the calendar on the return date (Leader v. Leader, 8 Misc 2d 1015; Cohen v. Gordon, 21 Misc 2d 1056). Submission by oral argument or the placing of the motion papers in the court’s hands for consideration after calendar call, precludes withdrawal (Marsh v. Marsh, 63 N. Y. S. 2d 42) without the consent of all parties (Hoover v. Rochester Print. Co., 2 App. Div. 11; Heaberkorn v. Macrae, 36 Misc 2d 1072; People v. Higley, 110 N. Y. S. 2d 296) ox without leave of the court (Wallace v. Ford, 44 Misc 2d 313).
In this case one defendant has objected to withdrawal and plaintiff has failed to seek leave of the court. There can be no doubt that after the calendar call on February 8, 1973, the motion for temporary injunction was before the court for its consideration. It may not be withdrawn without prejudice and it will be entertained on the merits.
The second procedural issue is whether the Commissioners’ cross motion to dismiss was abated by service of an amended complaint. In this Department, at least, a motion to dismiss addressed to the merits may not be defeated by an amended pleading (Baker v. Reis, 223 App. Div. 842; 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3025:07) although there is authority to the contrary (Foreman v. De Costa, 91 N. Y. S. 2d 655; Ross v. Davis, 83 N. Y. S. 2d 85). In the instant case, moreover, the amended pleading makes no change worthy of mention. It adds the words ‘ ‘ in 1959 ’ ’ to paragraph 14; it inserts the words ‘ ‘ as it existed in 1959 ” in paragraph 16 a; it incorporates paragraphs 16 e, d and e, into one paragraph 16 c; and adds two meaningless sentences. Finally it inserts a new paragraph 17 which adds nothing to the original complaint. The theory of the first complaint remains intact, unchanged and unsupplemented. The language changes are minuscule and unimportant. The Commissioners’ cross motion is not affected at all. When the court stated that it would treat the cross motion as directed to the second complaint neither plaintiff nor the Commissioners objected. For these reasons jurisdiction over the cross motion to dismiss is retained by the court.
The two cross motions made by intervenors-defendants will be treated as nullities (CPLR 2214) except insofar as they oppose the motion for temporary injunction.
Under attack in this action is section 85 of the Town Law which provides that in a first class town a proposition may be *63 approved by a vote of the electorate to divide the town into separate wards for the purpose of electing town Councilmen. Such a proposition was approved by the Brookhaven electorate in the general election of 1972, and the validity of the balloting has been upheld in Matter of D’Addario v. McNab (Index No. 72-15472) in a decision dated January 15, 1973.
Plaintiff asserts that the provisions of section 85 cannot apply to the Town of Brookhaven because the Dongan Patent of 1686 provided for the selection of trustees of the freeholders and commonalty of the town “ by the majority of voices of the freeholders and freemen of the Towne of Brookhaven.” Since by virtue of chapter 841 of the Laws of 1959, the Supervisor and the Town Councilmen assumed the positions of Trustees of the Town, plaintiff argues that election of the -Councilmen under a ward system would violate the provisions of the patent. Therefore, he asserts, section 85 of the Town Law violates section 15 of article I of the New York State Constitution, chapter 841 of the Laws of 1959 and section 10 of article I and the Fourteenth Amendment of the United States Constitution. No memorandum of law or brief on this point or any other was submitted by any party.
Public interest in the British Crown and the tortured history of the English royal succession is apparent from the large numbers of television dramas, motion pictures and legitimate stage shows which have been produced on that subject in recent years. Yet it would shock the people of Brookhaven if they were told that His Majesty, James II, still controls their governmental destinies through the patent issued by his Boyal Governor, Thomas Dongan. If indeed the Dongan Patent is a contract which must remain inviolate, and it may not be impaired by the Brookhaven electorate or anyone else, because of the protection of section 10 of article I of the United States Constitution, then it follows that the form of government provided in it may be changed solely by the following means: authorization from Queen Elizabeth II of Great Britain, or amendment of the Federal Constitution to permit King James’ Patent to be impaired. Fruitless are the ageless words of Thomas Jefferson declared by our Continental Congress on July 4, 1776: “ That these United Colonies are, and of Bight ought to be Free and Independent States; that they are Absolved from all Allegiance to the British Crown, and that all political conneétion between them and the State of- Great Britain, is and ought to be totally dissolved; and that as Free and Independent States, they have full Power to levy War, conclude Peace, contract *64 Alliances, establish. Commerce, and to do all other Acts and Things which Independent States may of right do.” •
Captain General Dongan stated “ that, henceforward, for evermore, there be and shall be trustees of the freeholders and commonalty of the towne of Brookhaven ”. These Trustees were to be chosen “ according to the manner and forme hereinafter expressed,” on “ the first tuesday of May forever.” The terms were for one year. Their president was to be the first chosen and five of the seven Trustees constituted a quorum. Since •six of the present Trustees of the Town of Brookhaven are elected to four-year terms on the Tuesday next succeeding the first Monday in November, and the other Trustee is elected for a term of two years, plaintiff is, in effect, alleging that the present Town Board of Brookhaven serves illegally.
Although the first New York Constitution of 1777 confirmed and ratified the royal grants and charters, the continuance of governmental powers in the Trustees was qualified by the words “ until otherwise directed by the legislature.” Later the Legislature did direct otherwise by divesting the Trustees of their governmental powers and by the enactment of the Town Law, County Law, Highway Law, Tax Law, and other statutes.
The legislative power to alter the governmental provisions of Dongan Patents has been long settled (People ex rel. Squires v. Hand, 135 N. Y. S. 192, 195, affd. 158 App. Div. 510; People ex rel. Deitz v. Hogan, 165 App. Div. 298, affd. 214 N. Y. 216; Knapp v. Fasbender, 1 N Y 2d 212). In Squires (supra), the 12-man Board of Trustees elected under the Dongan Charter in Southampton Town brought a quo warranto proceeding to oust the five man board elected for two-year terms pursuant to a 1902 statute. That attack, 51 years ago, raised many of the same arguments as to the inviolate nature of the charter. The court rejected the argument, stating (p. 195) :
“ But this charter did not surrender control over the town officials or erect independent governmental agencies that should forever remain beyond the reach of the Legislature. Such a perpetual imperium in imperio would have been as repugnant to British colonial administration as its inequality and favoritism are opposed to our present political standards. All these charters have been the subject of legislative modification. No court has questioned this power to make such changes, as such grants are not private, but public and governmental. That in its radical modification of the powers of the Southampton trustees the Legislature responded to a popular demand in 1818 does not detract from its exercise of the right to interfere with *65 these officials. It then took from the chartered town trustees the greater part of their powers, which it conferred on the newly formed board of proprietors.
“ Huntington’s Dongan Patent had complete revision in 1873. The territory of Babylon was set off (chapter 105), and later (chapter 492) the charter trustees of Huntington were abolished, and new town officers substituted. Similar important modifications were enacted in respect to the trustees of Brookhaven. Chapter 73, Laws 1899.”
The Dongan Charter of 1686 for New York City provided that “ there should forever thereafter be within the city of New York, a mayor, recorder, six aldermen and six assistants,” with one alderman and one assistant elected from each ward. In 1830, 1849, 1853 and 1870 various changes to the charter were enacted by the Legislature creating new boards and officers, altering terms, and even providing for at large election of some aldermen. As of 1875, assistant aldermen were abolished. In Demarest v. Mayor etc. of City of N. Y. (74 N. Y. 161, 166), one of them attacked the statute as invalid because it conflicted with the Dongan Charter. The court held: ‘ ‘ The corporation of the city of New York is a public corporation, and hence its charter is always subject to amendment or alteration by the legislative power, except as restrained by some constitutional inhibition. The Dongan and Montgomerie charters have no peculiar sanctity because they were granted under the sovereigns of England. They were public charters granted for public purposes, and are as much subject to legislative control as charters of the same kind granted by the Legislature of the State.”
Plaintiff’s complaint relies in part on the provisions of section 15 of article I of the New York State Constitution which stated that “nothing contained in this constitution * * * shall annul any charters to bodies politic or corporate ”. That section of the Constitution was repealed in 1962. In commenting on the predecessor section of the New York State Constitution which contained the same provision, Judge Earl said (Demarest v. Mayor etc. of City of N. Y., 74 N. Y. 161, 168, supra): “ This provision is not a restraint upon legislative power, but simply a declaration that the Constitution itself shall not annul such charters. But the act now in question does not annul any charter ; it simply amends or alters the charter. The sole object of that constitutional provision was to leave the charters referred to intact so far as the operation of the Constitution itself "was concerned.”
*66 If the court honors plaintiff’s argument that the Dongan Charter is immutable because of section 10 of article I and the Fourteenth Amendment of the United States Constitution and the repealed section 15 of article I of the New York State Constitution, then it must conclude that the Legislature acted illegally in adopting chapter 841 of the Laws of 1959. That act authorized substantial changes in the governmental structure provided in the patent. It abolished the offices of trustees of freeholders and commonalty of the Town of Brookhaven, transferring their rights, duties, powers and jurisdiction to the Town Board members who were to serve, ex officio, as Trustees of the Town. Prior Legislatures have also altered the patent. Chapter 480 of the Laws of 1898 provided for seven trustees to serve two-year terms. Chapter 73 pf the Laws of 1899 provided for four trustees to serve two-year terms and three trustees to serve four-year terms after which all terms were to be four years.
Chapter 841 of the Laws of 1959 contained several other provisions. If the town opted by referendum under section 12 of Town Law to become a first class town it could have six councilmen instead of the usual four and it reduced the number of Justices of the Peace. The following language appears in section 1 of the chapter: “ Such resolution shall also provide that in all other respects the provisions of the town law relating to towns of the first class not inconsistent therewith shall apply to the town of Brookhaven upon its change of classification.”
Subdivision (c) of section 3 of the chapter provides in part: “ Upon becoming a town of the first class the town of Brook-haven shall be subject to all the provisions of the town law except as herein provided”.
The chapter contains no provisions inconsistent with the Town Law.
By plaintiff’s reasoning the town is precluded from exercising the same right as other towns under the Town Law: to create a new town (§ 81, subd. 1, par. [f]); to establish or abolish the ward system (§ 81, subd. 2, par. [a]); to become a suburban town (art. 3-A); to abolish the elective offices of Highway Superintendent, Town Clerk and Receiver of Taxes (§ 20, subd. 6). Under section 23 of the Municipal Home Rule Law, subject to referendum (and any problems of inconsistency with general law), a town may change the membership or composition of its legislative body; abolish an elective office or change the method of nominating, electing or removing elective officers; abolish, transfer or curtail the powers of an elective officer; or create a new elective office. Under section 10', of the same law, a town *67 may adopt a local law relating to the ‘ ‘ powers, duties * * * number, mode of selection and removal * * * of its officers.”
Section 85 of the Town Law is an act of the State Legislature which becomes effective in any first class town when a majority of its electors vote to make it effective. It is the general rule that the application and enforcement in given localities of general affirmative legislation, may be made dependent on the will of the voters of such localities (16 C. J. S., Constitutional Law, § 142) and the Legislature may draft a charter or optional form of government for municipalities and make its adoption dependent upon the vote of the locality (Cort v. Smith, 249 App. Div. 1, affd. 273 N. Y. 481; Cleveland v. City of Watertown, 222 N. Y. 159; Matter of Mooney v. Cohen, 272 N. Y. 33; Stanton v. Board of Supervisors of County of Essex, 191 N. Y. 428; People ex rel. Unger v. Kenedy, 207 N. Y. 533).
Section 85 is not a local law or ordinance. It is a legislative act complete in itself. Nothing remains to make the act an existing law. The electors of a first class town may make it applicable if they see fit. Neither the legislative nor corporate powers of the town are impaired by it (see Cleveland v. City of Watertown, 222 N. Y. 159, 165, supra). Nothing contained in chapter 841 of the Laws of 1959 precludes the Town of Brookhaven from availing itself of the benefits of section 85 of the Municipal Home Buie Law.
Chapter 841 of the Laws of 1959 is a special law. It may be superseded not only by act of the New York State Legislature but by local law adopted by the Town Board (Johnson v. Etkin, 279 N. Y. 1). Section 85 of the Town Law is a general law because it applies to all towns. Under it Brookhaven could change its method of electing couneilmen, just as under section 12 it could choose to become a first class town. The changes provided for in chapter 841 of the Laws of 1959 were contingent upon public approval at the polls. The theory that the State Legislature has made the Town of Brookhaven the only town which may not utilize its options under the Town Law and the Municipal Home Buie Law to modify governmental structure is baseless. Chapter 841 specifically excludes any such notion.
The representative form of legislative body precedes even the Dongan Patent which makes reference to it. It-is the manner by which members of the Congress and our State Legislature are chosen. While election of Bepresentatives-at-Large in accordance with the system presently in effect in Brookhaven appears to meet constitutional requirements (see Dusch v. Davis, *68 387 U. S. 112, where the at-large system guaranteed nomination of individuals residing in the various areas of the governmental subdivision) it has been deemed a permissible deviation from the strict equality guaranteed by a district (or ward system) (Abate v. Mundt, 25 N Y 2d 309, 315, also dissent 319, 320). What must be guaranteed under the Constitution is “ one person, one vote ” (Gray v. Sanders, 372 U. S. 368, 381) and this applies to legislative bodies below the State Legislature (Seaman v. Fedourich, 16 N Y 2d 94). If the vote of every citizen under the ward system has the weight of every other vote, the constitutional test is met (Treiber v. Lanigan, 48 Misc 2d 434, mod. 25 A D 2d 202, rearg. granted 25 A D 2d 937).
Although that is not his purpose, plaintiff’s rationale relies upon continued obeisance to the British Crown, a yoke long since overthrown. If the Dongan Patent is a contract as sacred as plaintiff asserts, then the town now owes to Elizabeth II 197 Iambs and 7,880 shillings, for the patent directs that the town must pay “ yearly, & évery yeare from henceforth, to our soverigne Lord the King, his heires and Successors, or to such officer, or officers, as shall be appointed to Receive the same, the Sum of1 one Lamb ’ ’ as quit rent and it further provides for the payment to “ his sd majesty * * * yearly, & every yeare forever, the full & just .sume of fourty shillings, curant money ”. The court’s computations are based on a cutoff date of 1776. If Brookhaven Town continued to make such payments to George III during the Royal Army’s occupation of Long Island during the Revolution, the ‘ ‘ sume ’ ’ due may be somewhat less.
The action is wholly without merit. The motion for a preliminary injunction is denied on the merits and the action is dismissed.