Atlantic Heights Specialty Script Corp., Plaintiff,

against
Downstate at Lich Holding Company, Inc., Atlantic Heights Pharmacy, Inc., Long Island College Hospital, Continuum Health Partners, Inc. a/k/a Continuum Services and Fortis Property Group, LLC, Defendants.


507208/2015

Attorney(s) for Plaintiff(s)
Certilman Balin Adler & Hyman LLP
90 Merrick Ave — 9th Floor
East Meadow, New York 11553
Attorney(s) for Defendant(s)
John Lonuzzi, Esq.
Lonuzzi & Woodland LLP
60 Sackett Street
Brooklyn, New York 11231
Abrams, Fensterman, Fensterman, 
Eisman, Formato, Ferrara & Wolf, LLP
1 MetroTech Center, Suite 1704
Brooklyn, New York 11201


Carolyn E. Demarest, J.

In this action by plaintiff Atlantic Heights Specialty Script Corp. (plaintiff), defendant Downstate At LICH Holding Company, Inc. (Downstate) cross-moves,[FN1]
under motion sequence number two, for an order dismissing plaintiff's complaint as against it in its entirety: (1) pursuant to CPLR 3211 (a) (1), based upon the ground that plaintiff's claims are barred by the documentary evidence, (2) pursuant to CPLR 3211 (a) (5), based upon the doctrine of collateral estoppel, and (3) pursuant to CPLR 3211 (a) (7), based upon the ground that it fails to state a cause of action. Defendant Fortis Property Group, LLC (Fortis) similarly cross-moves, under motion sequence number three, for an order, pursuant to CPLR 3211 (a) (1), (5), and (7), dismissing plaintiff's complaint as against it.[FN2]

BACKGROUND
Plaintiff operated a retail pharmacy at 349 Henry Street, in Brooklyn, New York, under the trade name Atlantic Heights Pharmacy, offering health and beauty aids and prescription drugs for sale to the public (the pharmacy business), pursuant to an Asset Purchase Agreement dated August 10, 2010, by which plaintiff acquired the pharmacy business, including all of its prescription files, inventory, equipment and fixtures, phone numbers, goodwill, and trade name, from defendant Atlantic Heights Pharmacy, Inc. (Pharmacy), an affiliate of Long Island College Hospital (LICH). The transactions detailed in the Asset Purchase Agreement closed on March 25, 2011, whereby plaintiff [*2]became the owner of the pharmacy business and began operating it in accordance with a Pharmacy Services Agreement and a Pharmacy Operating Agreement, both dated March 25, 2011, entered into between plaintiff and LICH, the governing body of Pharmacy and its sole shareholder.
The Pharmacy Services Agreement between LICH and plaintiff allowed plaintiff to operate the pharmacy for the benefit of LICH and its patients, with various restrictions for a limited time and for a limited purpose. Specifically, the Pharmacy Services Agreement provided that LICH was a "covered entity" as defined in section 340B of the federal Public Health Act (42 USC §256(b)) (section 340B) and was eligible to purchase, from drug manufacturers who signed a drug purchasing agreement with the United States Department of Health and Human Services and/or the manufacturers' wholesalers, certain outpatient drugs at reduced prices for use by eligible patients, and that LICH desired to engage plaintiff to serve as a 340B contract pharmacy for LICH to dispense 340B drugs to eligible patients. The term of the Pharmacy Services Agreement was initially two years, with automatic annual renewal unless otherwise terminated as provided therein, including, inter alia, that either LICH or plaintiff could terminate the agreement upon 60 days notice or immediately if LICH were no longer qualified as a covered entity.
Simultaneous with the closing of the Asset Purchase Agreement, plaintiff and LICH entered into a License Agreement dated March 25, 2011 (the License Agreement). The License Agreement granted plaintiff a revocable license to occupy a designated area consisting of approximately 780 square feet in the aggregate, including 634 rentable square feet of retail pharmacy space on the first floor and approximately 150 rentable square feet of storage space in the basement of the building owned by LICH located at 349 Henry Street (the Henry Street property). Paragraph 2 of the License Agreement provided that "[t]he term of this License . . . shall be effective as of the Commencement Date', which shall be the Closing Date as that term is defined in the Asset Purchase Agreement [i.e., March 25, 2011] . . . [and] shall expire upon the substantial completion of the Fuller Pavilion Space . . . (the Expiration Date'), unless terminated earlier in accordance with law or the terms hereof . . .". Paragraph 12 of the License Agreement provided: "[i]t is expressly understood and agreed that this License Agreement is intended by the parties hereto to constitute a license of the Licensed Area and not a lease or sublease thereof".
Paragraph 21 of the License Agreement provided as follows:
"339 Hicks Street Lease. We, as landlord, and you, as tenant, are parties to that certain Lease for certain premises located on the ground floor of 339 Hicks Street, Brooklyn, New York 11201 (the Fuller Pavilion Space') pursuant to a Lease Agreement of even date herewith (the Lease'). Any default under the Lease shall be deemed a simultaneous default under this License Agreement, and any default under this License Agreement shall be [*3]deemed a simultaneous default under the Lease. The parties hereto acknowledge that the term of this License Agreement is intended to coincide, and be coterminous with, the Abatement Period (as defined in the Lease) to which you may be entitled under the Lease and during which you are expected to perform Tenant's Work (as defined in the Lease). Except as otherwise provided herein, so long as the Fuller Pavilion Space remains uncompleted, this License Agreement shall continue on a month-to-month basis until such time as the Fuller Pavilion Space is substantially completed. You shall provide written notice to us of such substantial completion (the Notice'), which Notice shall set the Expiration Date for this License Agreement. Notwithstanding the foregoing, we shall have the option, exercisable at any time after the expiration of the Abatement Period, upon not less than ninety (90) days' prior written notice to you, to terminate this License Agreement in advance of the completion of the Fuller Pavilion Space, for any or no reason. In the event that the Lease shall terminate for any reason during the term hereof, this License Agreement shall immediately terminate simultaneously therewith, and be of no further force or effect."
Also simultaneously with the closing of the Asset Purchase Agreement, plaintiff and LICH entered into a Lease Agreement dated March 25, 2011 (the Lease Agreement). The Lease Agreement provided that, subject to the terms, covenants, and conditions thereof, LICH leased to plaintiff approximately 1,136 rentable square feet on the ground floor of its building known as the Fuller Pavilion owned by LICH and located at 339 Hicks Street, in Brooklyn, New York (the Fuller Pavilion or the Hicks Street property). The Housing and Urban Development Authority (HUD) and the Dormitory Authority approved the Asset Purchase Agreement, the License Agreement, and the Lease Agreement, as required thereunder.
On or about May 29, 2011, LICH conveyed its interest in the Henry Street property and the Hicks Street property to Downstate, as its successor in interest, after receiving the approval of the New York State Supreme Court as required by Not-For-Profit Corporation Law § 511. Paragraph 10 (g) of the Asset Purchase Agreement, paragraph 11 of the License Agreement, and paragraph 18 of the Lease Agreement acknowledge that any assignee of LICH would be obligated to perform the covenants of such documents. Plaintiff alleges that Downstate has been dealing with it pursuant to the Lease Agreement and the License Agreement, and it is not disputed that Downstate is bound by the License Agreement and the Lease Agreement between plaintiff and LICH with respect to the Henry Street property and the Hicks Street property.
On May 1, 2013, two years after acquiring the hospital operations from LICH, SUNY Downstate Medical Center (SUNY) sought proposals from qualified parties who [*4]could provide health care services at or around the LICH site in Brooklyn. SUNY's planned departure from operating the hospital generated significant press coverage and led to highly publicized lawsuits. On February 25, 2014, this Court and Justice Johnny Lee Baynes approved a settlement of those lawsuits, in which all parties agreed to discharge their claims, and SUNY and Downstate issued a new solicitation for parties seeking to purchase the LICH property and provide health care services there.
Pursuant to the terms of that settlement, Downstate entered into the First Amended and Restated Purchase and Sale Agreement with defendant Fortis, effective June 30, 2014,to purchase the LICH property, including the Henry Street property and the Hicks Street property (Restated PSA) . Fortis proposes to develop the sites for residential use, and Fortis' proposal does not include a hospital, although, by separate agreement with NYU Hospitals Center, an emergency room and other medical services will be provided on the Fuller Pavilion site. The Restated PSA requires that the "Core Premises" (inclusive of the Fuller Pavilion) and the Henry Street property be delivered vacant "free of all leases or other occupying agreements" at closing (¶ 10.1(c)).
Downstate terminated the License Agreement with plaintiff by a 30-day notice of termination dated May 23, 2014, effective on June 30, 2014. When plaintiff did not vacate the Henry Street property on June 30, 2014, Downstate, on July 2, 2014, commenced a summary holdover proceeding in the Civil Court, Kings County (the Civil Court proceeding), to evict plaintiff from the Henry Street property and recover possession of the premises occupied by plaintiff's pharmacy. Plaintiff, as the respondent therein, interposed an answer to Downstate's petition in the Civil Court proceeding, which alleged denials and affirmative defenses. Specifically, plaintiff claimed that it was entitled to remain in possession pursuant to paragraph 21 of the License Agreement, which required that the License terminate upon the Fuller Pavilion Space being completed for relocation by it. It contended that since the Fuller Pavilion Space was not completed, Downstate could not terminate its license and right to occupancy at the Henry Street property. Plaintiff argued that so long as the Fuller Pavilion Space remained uncompleted, the License Agreement continued on a month-to-month basis.
In a 27-page decision and order dated April 7, 2015, Judge Harriet L. Thompson held that it was "clear by a plain reading of all of the provisions of the License [Agreement], [the] Lease [Agreement], and the closing of title to the pharmacy, that the parties intended the occupancy of 349 Henry Street to be temporary, according to both documents, for six months," corresponding to an Abatement Period during which plaintiff, "at its own cost and expense," was "supposed to build out the new space and occupy that space like a regional drug store chain.'" She noted that, upon completion of the build-out, plaintiff was to send a notice to Downstate, and, upon receipt of that notice from plaintiff, the License Agreement would self-terminate. She pointed to the fact that both plaintiff and Downstate agreed that plaintiff never complied with the build-out provision and never occupied the Fuller Pavilion.
Judge Thompson found that the License Agreement was "intended to be a [temporary] revocable License Agreement," until the build-out was completed at the 339 Hicks Street location, terminable by agreement or by law or following the service of a 90-day notice. Although she agreed with plaintiff here that termination required service of a 90-day notice, she nonetheless determined that Downstate duly terminated the License Agreement as of June 30, 2014 by its 30-day notice dated May 23, 2014, in conformity with RPAPL § 713(7), apparently based upon plaintiff's failure to act. Plaintiff's affirmative defenses and counterclaim were stricken, however, Judge Thompson, in her April 7, 2015 decision and order, gave the parties written notice, pursuant to CPLR 3211 (c), that she intended to treat Downstate's motion as a motion for summary judgment, and afforded plaintiff a final opportunity to submit any additional evidence it may have to rebut the evidence presented by Downstate. Since plaintiff did not submit any additional evidence, in a decision and order dated May 15, 2015, Judge Thompson granted Downstate a final judgment of possession against plaintiff, with a warrant of eviction to issue forthwith but with execution stayed to August 15, 2015.
On June 11, 2015, following Judge Thompson's April 7, 2015 and May 15, 2015 decisions, plaintiff commenced the instant action against Downstate, Fortis, LICH, Pharmacy and Continuum Health Partners, Inc. a/k/a Continuum Services (Continuum), and filed a notice of pendency against the Hicks Street property. Plaintiff's original complaint alleged four causes of action, including two causes of action for breach of contract (the first relating to the Lease Agreement and the second relating to the License Agreement), a third cause of action for tortious interference with contract, and a fourth cause of action for a declaratory judgment. 
On June 23, 2015, plaintiff moved by Order to Show Cause for a preliminary injunction, enjoining and restraining Downstate and Fortis from taking any action in furtherance of, or in connection with, the demolition of the structures situated at the Hicks Street property. This Court granted a Temporary Restraining Order for such relief pending the hearing of the application. On July 13, 2015, plaintiff vacated the Henry Street property and ceased operating its pharmacy business there, allegedly as a result of Downstate's failure to supply services to the premises. On July 16, 2015, Downstate and Fortis filed their cross motions to dismiss plaintiff's complaint pursuant to CPLR 3211.
On July 27, 2015, simultaneous with filing its opposition to Downstate's motion, plaintiff filed an amended complaint. Plaintiff's amended complaint alleges seven causes of action. Defendants Downstate and Fortis elected to have their motions addressed to the amended complaint. Plaintiff's first and second causes of action in the amended complaint, for breach of contract and implied covenant of good faith and fair dealing relate to the Lease Agreement for the Hicks Street Property and to the License Agreement for the Henry Street property, respectively. Plaintiff's third and fifth cause of action allege breaches of the same contracts as those set forth in its first and second cause of action, respectively. Plaintiff's fourth cause of action for tortious interference with [*5]contract is a revised version of its original third cause of action and is now pleaded solely against Fortis. Plaintiff's sixth cause of action is a revised version of its fourth cause of action for a declaratory judgment. Plaintiff's seventh cause of action seeks preliminary and permanent injunctive relief against demolition.
During the pendency of the instant litigation in Supreme Court, in a decision and order dated August 18, 2015, Judge Thompson granted a motion by plaintiff to reargue and renew her April 7, 2015 decision and order and her May 15, 2015 decision and order. Upon evidence first submitted by plaintiff on that motion, Judge Thompson issued a 22-page decision, recapitulating much of her prior analysis, in which she inexplicably concluded that the motion to reargue and renew was denied. This decision will be discussed infra. On September 3, 2015, Downstate consummated the initial closing under the Restated PSA among Downstate, FPG Cobble Hill Acquisitions, LLC, Fortis, and NYU Hospitals Center (NYUHC), which transferred ownership of the Henry Street property and 16 other properties from Downstate to special purpose entities formed by FPG Cobble Hill Acquisitions, LLC to hold title. The sum of $120,000,000 of the purchase price was paid and used to defease the Personal Income Tax (PIT) Bonds related to the LICH projects. Title to the New Medical Site (formerly known as the Fuller Pavilion) will be conveyed to NYUHC, when the contractual conditions for transfer have been met.
Following oral argument on October 28, 2015, this Court, finding the equities did not weigh in plaintiff's favor, given the serious and substantial consequences to defendants and the public of granting such relief, and that money damages, as demanded in the amended complaint, would adequately compensate plaintiff, denied plaintiff's motion for a preliminary injunction, vacated the temporary restraining order issued on June 23, 2015, and vacated the notice of pendency filed on August 28, 2015. By stipulation dated November 10, 2015, plaintiff discontinued its action with prejudice only against LICH and Continuum, leaving Downstate, Pharmacy and Fortis as the only remaining defendants
DISCUSSION
Initially, it is noted that plaintiff argues that because it has amended its complaint, Downstate and Fortis' cross motions have been rendered moot. This argument is devoid of merit. An amended complaint does not defeat or render a motion to dismiss academic, but, rather, the moving party has the option to decide whether its motion should be applied to the new pleading (see Livadiotakis v Tzitzikalakis, 302 AD2d 369, 370 [2d Dept 2003]; Sage Realty Corp. v Proskauer Rose, 251 AD2d 35, 38 [1st Dept 1998]; Sholom & Zuckerbrot Realty Corp. v Coldwell Banker Commercial Group, 138 Misc 2d 799, 801 [Sup Ct, Queens County 1988]; Matter of D'Addario v McNab, 73 Misc 2d 59, 62 [Sup Ct, Suffolk County 1973]). Here, both Downstate and Fortis have elected to proceed with their cross motions to dismiss and to have them directed at plaintiff's [*6]amended complaint. Thus, the court will address these cross motions as against plaintiff's amended complaint.
Plaintiff's first cause of action for breach of contract and the implied covenant of good faith and fair dealing is based upon an alleged breach of the Lease Agreement by Downstate. Plaintiff alleges that the Lease Agreement provided it with the right to lease and operate a pharmacy at the Hicks Street property for five years, commencing on March 25, 2011, with an option to renew for two additional terms of five years each. It further alleges that it was expressly understood and agreed, in the Lease Agreement, that it would commence and continue to operate its pharmacy business at the Henry Street property until it could relocate to the Hicks Street property, but that it was never able to take occupancy of the Hicks Street property. Specifically, it alleges that it met with representatives of Downstate on a regular basis to inquire as to when it would be given access to and possession of the Hicks Street property in order to commence construction activities to renovate the pharmacy space in the hospital building and to thereafter relocate its pharmacy within the hospital. It claims that Downstate gave pre-textual excuses for its delay and refusal to deliver possession of the Hicks Street property, and interfered with its ability to occupy and use the Hicks Street property, thereby frustrating plaintiff's performance. It asserts that it has been harmed by Downstate's conduct, resulting in it sustaining monetary damages.
Downstate contends that this cause of action is barred by the doctrine of collateral estoppel due to Judge Thompson's rulings in the three orders rendered by her in the Civil Court proceeding. It argues that Judge Thompson has already rejected this claim and held that plaintiff waived any rights it had to the Hicks Street property.
"The doctrine of collateral estoppel, a narrower species of res judicata, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same" (Ryan v New York Tel. Co., 62 NY2d 494, 500 [1984]). "It is a doctrine intended to reduce litigation and conserve the resources of the court and litigants and it is based upon the general notion that it is not fair to permit a party to relitigate an issue that has already been decided against it" (Kaufman v Eli Lilly & Co., 65 NY2d 449, 455 [1985]). 
"Collateral estoppel comes into play when four conditions are fulfilled: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits'" (Conason v Megan Holding, LLC, 25 NY3d 1, 17 [2015], rearg denied 25 NY3d 1193 [2015], quoting Alamo v McDaniel, 44 AD3d 149, 153 [1st Dept 2007]; see also Ryan, 62 NY2d at 500; Gramatan Home Invs. Corp. v Lopez, 46 NY2d 481, 485 [1979]). "Once a question of ultimate fact has been determined by a valid and final judgment, the doctrine of collateral estoppel holds that [such] issue cannot again [*7]be litigated between the same parties in any future lawsuit" (Maracina v Shirrmeister, 105 AD2d 672, 673 [1st Dept 1984]).
Thus, " [t]he doctrine of collateral estoppel bars relitigation of an issue which has necessarily been decided in a prior action and is determinative of the issues disputed in the present action, provided that there was a full and fair opportunity to contest the decision now alleged to be controlling'" (Zanani v Schvimmer, 117 AD3d 941, 943 [2d Dept 2014], quoting Capellupo v Nassau Health Care Corp., 97 AD3d 619, 621 [2d Dept 2012]; see also Tydings v Greenfield, Stein & Senior, LLP, 11 NY3d 195, 199 [2008]). "The party seeking the benefit of collateral estoppel bears the burden of proving that the identical issue was necessarily decided in the prior proceeding, and is decisive of the present action" (City of New York v College Point Sports Assn., Inc., 61 AD3d 33, 42 [2009]; see also Buechel v Bain, 97 NY2d 295, 304 [2001]; D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 [1990]). "The party against whom preclusion is sought bears the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination" (City of New York, 61 AD3d at 42; see also Buechel, 97 NY2d at 304). 
While Judge Thompson did make findings relating to the Lease on the Hicks Street property in the context of her findings regarding the termination of the License on the Henry Street property, plaintiff took an appeal from the Civil Court orders entered by Judge Thompson on April 7, 2015 and May 15, 2015. On August 18, 2015, the same day Judge Thompson issued her decision on the motion for renewal/reargument, the Appellate Term, Second Department granted a stay with respect of those orders pending the determination of the appeals (Slip Op 2015 NY 83587(U)). By Decision and Order of the Appellate Term, Second Department, rendered November 5, 2015, in response to cross-motions by the parties, the Appellate Court dismissed the appeals from the Civil Court orders of April 7 and May 15, 2015, those orders having been superceded by the Civil Court order of August 18, 2015, "made upon, in effect, reargument and renewal"and granted a stay pending decision on appeal on condition the appeal be perfected by January 8, 2016 (Slip Op No 2015 NY 90549(U)). The stay was extended by order of the Appellate Term entered February 25, 2015 on condition the appeal is perfected by April1, 2016. Thus, there is no finality to Judge Thompson s Order of August 18, 2015 with respect to the Lease for the Hicks Street property and none of her findings should be accorded collateral estoppel effect in this action.
While " [t]he rule in New York is that the pendency of an appeal does not prevent the use of the challenged judgment as the basis of ' collateral estoppel", collateral estoppel will not preclude litigation of a ruling made as an alternative basis for the court's decision (Franklin Development Co., Inc. v Atlantic Mutual Insurance Co., 60 AD3d 897, 899 [2d Dept 2009] quoting Anonymous v Dobbs Ferry Union School Dist., 19 AD3d 522, 522-523 [2d Dept 2005] quoting Matter of Amica Mut. Ins. Co. [Jones], 85 AD2d 727, 728 [2d Dept 1981]). The application of this rule is particularly appropriate in this matter [*8]where many of the "rulings" made by Judge Thompson, upon which defendants rely, were actually dicta, not necessary to determining the only issue before her: the right of Downstate to evict plaintiff from the Henry Street property. The fact that the Lease was presented in support of plaintiff's effort to resist eviction from the Henry Street property did not expand the authority of the Civil Court to interpret the Lease and determine, factually, on summary judgment, whether the Lease had been breached (see generally, New York City Civil Court Act §204; Ross Realty v V & A Fabricators, Inc., 42 AD3d 246, 250 [2d Dept 2007] ("contractual damages not recoverable in a summary proceeding")).
It is further noted, moreover, that Judge Thompson acknowledged in her decision of August 18, that that summary holdover proceeding was limited to the right of possession of the Henry Street property and that the rights of plaintiff to recover money damages for breach of the Hicks Street Lease were "properly determined" in this Court. Thus, contrary to defendants' contentions with respect to plaintiff's first cause of action for breach of the Lease on the Hicks Street property, no collateral estoppel arises out of the decisions of the Civil Court. As the pleading sufficiently articulates a breach of contract claim against Downstate, including that Downstate frustrated plaintiff's efforts to perform by failing to provide access or possession of the Hicks Street premises to plaintiff, the motion to dismiss the first cause of action for breach of contract is denied.
However, the second cause of action alleged against Downstate for breach of contract and implied covenant of good faith and fair dealing relates to plaintiff's rights under the License for the Henry Street property, which were specifically addressed and adjudicated by Judge Thompson in the Civil Court summary proceeding, including the conclusion that the License was temporary and had been properly terminated by Downstate. Plaintiff argues that the License Agreement for the Henry Street property was intended to be a lease agreement, which granted exclusive possession of this space. It further alleges that paragraph 2 of the License Agreement provided that its term would only expire upon substantial completion of the Fuller Pavilion Space, and because the Fuller Pavilion Space has not been substantially completed, the License Agreement has not expired. It claims that Downstate breached the License Agreement by serving it with a notice to terminate its right to occupy the Henry Street property, and by failing to renew related agreements, including the Pharmacy Services Agreement. It asserts that it has sustained damages as a result of Downstate's alleged breach of the License Agreement.
Downstate contends that plaintiff's second cause of action must be dismissed, pursuant to the doctrine of collateral estoppel, since the issues were resolved against plaintiff in the Civil Court proceeding. Judge Thompson, in ruling that Downstate was entitled to evict plaintiff from the Henry Street property, specifically rejected plaintiff's identical arguments that the License Agreement was intended to be a lease, and that Downstate lacked the ability to terminate the License Agreement because the Fuller Pavilion Space was not yet completed.
Inasmuch as the identical issues raised in plaintiff's second cause of action were necessarily decided in the prior Civil Court proceeding, and the Civil Court's determination is decisive of plaintiff's second cause of action, the doctrine of collateral estoppel applies to bar plaintiff from re-litigating in this Court issues that were fully addressed in that proceeding. Consequently, dismissal of plaintiff's second cause of action is mandated (see CPLR 3211 [a] [5]). This is particularly so in light of the pendency of the appeal from the Civil Court order granting possession to Downstate and the stay extended by the Appellate Term.
Plaintiff's third cause of action for "Breach of Contract and Frustration of Purpose" against Downstate is indistinguishable from the first cause of action and is dismissed as duplicative thereof.
Plaintiff's fourth cause of action for tortious interference with contractual relationship, which is asserted against Fortis, alleges that Fortis was made aware of plaintiff's rights under the Lease Agreement, as well as the License Agreement, and knew that Downstate was the successor to LICH's obligations thereunder, by virtue of various disclosures, including the request for proposal which advised that some of the LICH properties were subject to third-party leases, and the highly publicized lawsuits with respect to the sale of the LICH assets to SUNY. Plaintiff contends that Fortis had an opportunity and did perform due diligence in connection with its proposed purchase of the LICH campus, as evidenced by the inclusion of reference to the Lease Agreement and the License Agreement in the lease between SUNY and Downstate and in the Restated PSA between Downstate and Fortis. Plaintiff complains that, despite this knowledge, Fortis required the buildings to be delivered vacant and free of leases and required the Fuller Pavilion to be demolished without any regard to the Lease Agreement or plaintiff's rights thereunder. Plaintiff alleges that "Fortis intentionally and without justification, maliciously solicited, importuned, and aided Downstate's breach of the Agreement(s) by, inter alia, encouraging and compelling Downstate to transfer its interest in the subject properties at issue in violation of the Agreement(s) in complete disregard of Plaintiff's rights thereunder." (Amended Complaint ¶ 99). Plaintiff claims that Fortis thereby tortiously interfered with its contractual relationship with Downstate as contained in the Lease Agreement and related agreements, causing it to sustain monetary damages and that, but for Fortis' intentional conduct, plaintiff would not have been deprived of its leasehold interests. Plaintiff further alleges that Fortis' conduct was extreme and outrageous so as to entitle it to punitive damages.
Fortis's motion to dismiss this cause of action pursuant to CPLR § 3211(a)(1) and (5) is premised upon its claim that Judge Thompson's decisions collaterally estop plaintiff from proceeding in this action because the Civil Court has already found that the Lease Agreement was not breached, that plaintiff waived its rights thereunder and that Downstate properly terminated the License Agreement. As this Court has determined, supra, in denying dismissal of plaintiff's first cause of action for breach of the Lease [*9]Agreement, the Civil Court orders do not collaterally estop plaintiff from litigating its claim against Fortis as the issue of Downstate's alleged breach remains to be litigated.
However, Fortis has alternatively argued that the fourth cause of action should be dismissed, pursuant to CPLR 3211(a)(7) for failure to state a cause of action.[FN3]
A claim for "[t]ortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom" (Lama Holding Co. v Smith Barney Inc., 88 NY2d 413, 424 [1996]; see also Kronos, Inc. v AVX Corp., 81 NY2d 90, 94 [1993]; M.J. & K. Co. v Matthew Bender & Co., 220 AD2d 488, 490 [2d Dept 1995]). 
As movant acknowledges, "[i]n considering a motion to dismiss . . . for failure to state a cause of action pursuant to CPLR § 3211(a)(7), the allegations . . . should be accepted as true, and the motion should be granted only if the facts as alleged do not fit within any cognizable legal theory" (Nagan Construction, Inc. v Monsignor McClancy Memorial High School, 117 AD3d 1005, 1006 [2d Dept 2014]). While Fortis seems to dispute that it had knowledge of the contracts between plaintiff and Downstate prior to Downstate's commencing its summary proceeding to evict plaintiff in 2014, relying upon SUNY's Request For Proposal issued February 26, 2014 following upon this Court's so-ordering of the Stipulation of Settlement in Boerum Hill Assoc. v State Univ. of New York (Kings County Index No. 13007/2013), the Court takes judicial notice that Fortis had submitted a prior proposal to SUNY in response to RFPX002539 on September 13, 2013. Accordingly, it is reasonable to infer that Fortis was aware of plaintiff's Lease Agreement and License Agreement long before Downstate sought to evict plaintiff from the Henry Street property. It is further noted, based upon this Court's personal knowledge of prior litigation before this Court, that SUNY's intent to close LICH was publicly announced prior to March 13, 2013, when the above-cited litigation was commenced. It is not disputed that the License and Lease Agreements are valid contracts.
Plaintiff's claim against Fortis for tortious interference with its Lease Agreement and License Agreement with Downstate is based upon the requirement in the Restated PSA that the two buildings be delivered vacant and free of all rights the prior occupants might have. This allegation is sufficient to identify what actions were taken by Fortis that induced Downstate's breach of these Agreements. However, a purchaser's requirement that real property be delivered vacant as a condition of closing is a common, and often essential, feature in real estate transactions. There is no allegation of illegality or [*10]impropriety in Fortis' demand. Although this provision in the Restated PSA certainly contemplated that the Lease and License Agreement would have to be terminated to meet the requirement, the condition could simply be achieved through negotiation of a buy-out. The fact that Downstate allegedly failed to notify plaintiff of its intent to terminate the Agreements, or to seek to negotiate some form of compensation to plaintiff, does not constitute Fortis' "intentional procurement of [Downstate's] breach of the contract [with plaintiff] without justification" (see Lama Holding Co., 88 NY2d at 424-425), notwithstanding that its contract with Fortis may have prompted its actions. The detailed plan that Fortis submitted in seeking to purchase the LICH properties supplies adequate justification for Fortis' inclusion in the Restated PSA of the condition that the properties be delivered vacant and free of any leases. The complaint fails to allege a basis to hold Fortis accountable to plaintiff for Downstate's actions in allegedly breaching the agreements and causing plaintiff to sustain damages. Accordingly, the fourth cause of action fails to state a cause of action for tortious interference with contract and must be dismissed.
Plaintiff's fifth cause of action against Downstate for breach of contract and punitive damages alleges that since February 2015, Downstate, by and through its representatives, acted in bad faith in an attempt to harm its pharmacy business at the Henry Street property by failing to provide heat, hot water, and air conditioning, and failing to ensure proper maintenance of telephone and internet lines. It claims that these actions were undertaken to harm its business and to force it out of business as part of its plan to evict it and to deliver vacant space to Fortis. It alleges that although it requested that Downstate take corrective measures to remedy this failure to provide essential services to its pharmacy business, Downstate continued to refuse to correct and/or adequately maintain the essential services necessary for it to operate its pharmacy business. Plaintiff asserts that as a result of these alleged bad acts by Downstate, it was forced to cease its operations at the Henry Street property on July 13, 2015, and seeks compensatory, as well as punitive damages, by reason of these alleged willful acts.
Barry Beshkin, plaintiff's president, in his affidavit, states that plaintiff was forced out of the Henry Street property due to the denial of essential services. He sets forth several instances when the phones and internet were not working, and asserts that in each of these instances, these services were not restored until after several days. He also states that there was no heat and hot water on February 9, 2015, and it was not restored until 10 days later, and that the air conditioning did not work beginning on May 10, 2015, and was not adequately fixed for four weeks, i.e. until June 15, 2015. 
Paragraph 7 of the License Agreement provided as follows:
"Services and Repairs. It is understood and agreed that we shall not be required to provide any services to you or to the Licensed Area other than those specifically set forth in this License Agreement. We shall maintain in [*11]good working order and repair the structural portions of the Licensed Area and the Building and all systems and equipment serving the Licensed Area and the Building (to the extent and in the condition such systems and equipment currently exist), including without limitation all plumbing, sprinkler systems, heating, air conditioning, ventilating, electrical and lighting facilities and equipment within or relating to the Licensed Area. We shall have access to the Licensed Area as necessary, at reasonable times and upon reasonable advance notice (except in case of emergency, when access will be given without notice as required) to perform necessary or required repairs in the Licensed Area, or in connection with the performance of repairs, alterations or improvements to the Building. We shall provide, or cause to be provided, HVAC, water and sewer and electrical service to the Licensed Area. You shall not be entitled to any setoff or reduction in the License Fee by reason of any failure by us to comply with the provisions of this or any other provision of this License Agreement. You will be responsible for arranging and paying for all other services (including but not limited to rubbish removal and telephone service) that may be required to operate your retail pharmacy in the Licensed Area" (emphasis added).
Thus, pursuant to the express terms of paragraph 7 of the License Agreement, Downstate was not responsible for telephone service, and this paragraph did not provide that Downstate was responsible for providing internet services. Nevertheless, Judge Thompson, in her May 15, 2015 order, directed Downstate to restore telephone/internet services and any other essential services described in the License Agreement by allowing the telephone carrier entry into the facility under its control to restore telephone/internet services forthwith and to maintain such services during the stay of the execution of the warrant of eviction, from the date of the decision, i.e., May 15, 2015, until August 15, 2015. Such stay has since been extended by the Appellate Term. It is thus apparent that the issues raised in plaintiff's fifth cause of action have been addressed in the decisions and orders of the Civil Court and, given the pendency of the appeal of those decisions, litigation in this Court is collaterally estopped.
Plaintiff's sixth cause of action for a declaratory judgment, which is asserted as against both Downstate and Fortis, seeks a declaration of the rights and obligations of the parties relative to the subject properties under the License Agreement and the Lease Agreement. Specifically, plaintiff seeks a declaration that Downstate has breached the License Agreement and the Lease Agreement, that the License Agreement and the Lease Agreement are in full force and effect, and that Downstate and Fortis are bound by all of the covenants contained therein, including the obligation to deliver the Hicks Street property in accordance with the Lease Agreement.
It is well established that a plaintiff may not seek a declaratory judgment when other remedies are available, such as a breach of contract action, which affords the plaintiff an adequate remedy (see JMF Consulting Group II, Inc. v Beverage Mktg. USA, Inc., 97 AD3d 540, 542 [2d Dept 2012], lv denied 19 NY3d 816 [2012]; Singer Asset Fin. Co., LLC v Melvin, 33 AD3d 355, 358 [1st Dept 2006]; Artech Info. Sys. v Tee, 280 AD2d 117, 125 [1st Dept 2001]; BGW Dev. Corp. v Mount Kisco Lodge No. 1552 of Benevolent & Protective Order of Elks of U.S. of Am., 247 AD2d 565, 568 [2d Dept 1998], lv denied 92 NY2d 813 [1998]; Apple Records v Capitol Records, 137 AD2d 50, 54 [1st Dept 1988]). Here, plaintiff's seventh cause of action for a declaratory judgment simply parallels its breach of contract claims and seeks a declaration of the same rights and obligations to which it claims to be entitled under those Agreements, upon which it has predicated its breach of contract claims. Thus, plaintiff cannot maintain this duplicative claim (see Wildenstein v 5H & Co, Inc., 97 AD3d 488, 491 [1st Dept 2012]).
Moreover, these issues insofar as relating to the License Agreement were previously litigated and decided in the Civil Court proceeding, wherein it was determined that Downstate had properly terminated the License Agreement pursuant to RPAPL 713 (7). While plaintiff argues that collateral estoppel should not apply to bar this cause of action because the "Civil Court cannot grant declaratory relief" (Green v Glenbriar Co., 131 AD2d 363, 364 [1st Dept 1987]), plaintiff cannot re-litigate these same issues by merely recasting its claim in the guise of a demand for a declaratory judgment. Thus, dismissal of this cause of action for a declaratory judgment is warranted (see CPLR 3211 [a] [1], [5], [7]).Plaintiff's seventh cause of action seeks a permanent injunction preventing Downstate and Fortis from taking action to demolish the Fuller Pavilion. As noted, plaintiff's motion for a preliminary injunction was previously denied by the Court's October 28, 2015 order upon an assessment of the equities as to each of the litigants, as well as the consequences to the People of the State of New York, and the availability of money damages in compensation of any losses to plaintiff. Dismissal of this cause of action is, therefore, required as it is now moot.
CONCLUSION
Accordingly, Downstate's cross motion and Fortis' cross motion to dismiss plaintiff's complaint are granted with respect to the second, third, fourth, fifth, sixth and seventh causes of action and are denied with respect to the first cause of action. Defendant Downstate shall serve and file its answer within 20 days.
This constitutes the decision, order, and judgment of the court.
ENTER,
J.S.C.



Footnotes

Footnote 1:Plaintiff's motion, under motion sequence number one, for a preliminary injunction, enjoining and restraining Downstate and Fortis from taking any action in furtherance of or in connection with the demolition of the structures situated at 339 Hicks Street, was denied by the court's order dated October 28, 2015.

Footnote 2:Downstate's cross motion and Fortis' cross motion, insofar as they both sought an order, pursuant to CPLR 6514 (a), cancelling plaintiff's notice of pendency filed on June 11, 2015 and plaintiff's amended notice of pendency filed on August 28, 2015, were granted by the court's October 28, 2015 order, and the Kings County Clerk was directed to vacate and remove the notice of pendency and amended notice of pendency from the record. Fortis' cross motion, insofar as it sought an order vacating the temporary restraining order issued on June 23, 2015, was granted by the court's October 28, 2015 order, and the temporary restraining order was vacated.

Footnote 3:Defendant Fortis' contention that the pleading is defective because the causes of action were not articulated separately as to each defendant and plaintiff failed to allege that the contract would not have been breached but for Fortis's action is moot as the Amended Complaint has cured such defects. The only remaining potentially viable claim against Fortis is the fourth cause of action.